Andrea MORGAN, Appellant,

v.

PSYCHIATRIC INSTITUTE
OF WASHINGTON, et
al., Appellees.

Nos. 93–CV–627, 93–CV–
694 and 93–CV–724.

District of Columbia Court of Appeals.

Argued May 10, 1996
Decided April 10, 1997.

Altomease R. Kennedy, Washington, DC, for appellant.

Carol Ann Petren, Washington, DC, with whom Laura N. Steel and Matthew W. Greene were on the brief, for appellee Psychiatric Institute of Washington.

Before FARRELL and RUIZ, Associate Judges, and MACK, Senior Judge.

RUIZ, Associate Judge:

Appellant, Andrea Morgan, appeals the trial court's grant of summary judgment for appellees, the Psychiatric Institute of Washington (PIW) and Mr. C.E. English–El, on her claims of negligent infliction of emotional distress. The trial court determined that to successfully oppose the summary judgment motion, Morgan had to show either a direct physical injury or show that she was placed in a zone of physical danger where she feared for her own safety because of appellees' negligence. Finding that neither condition had been met, the trial court granted summary judgment to PIW and English–El. PIW cross-appeals on a number of issues discussed *infra*.[1] We conclude that Morgan has presented sufficient evidence of physical injury that, if credited by the fact finder, could sustain her claims for negligent infliction of emotional distress. We also uphold the trial court's rulings related to PIW's cross-appeal. Therefore, the case is reinstated and remanded for further proceedings.

## I.

The circumstances giving rise to this case began on June 16, 1987, when Morgan entered PIW as a patient seeking treatment for her addiction to cocaine. During the month-

---

1. English–El joined PIW's summary judgment and directed verdict motions and also filed a timely appeal. This court granted English–El's request to adopt by reference PIW's briefs.

long in-patient program Morgan met English–El, who was himself a recovered addict and was employed by PIW as a drug counselor. English–El was one of Morgan's counselors at the program: He led group counseling sessions in which Morgan participated, gave Morgan one-on-one counseling, and encouraged Morgan to confide her most intimate secrets with him. Morgan and English–El developed a relationship during the program which Morgan alleges went beyond an appropriate counselor-patient relationship. Morgan testified that while at the program she and English–El spent their free time together, ate numerous meals together and walked arm-in-arm on a PIW-sponsored group outing. Morgan also testified that they passionately kissed on one occasion and engaged in hugging and hand-holding on other occasions. At the end of the program, English–El gave Morgan his home phone number. After completing the program in July, without having successfully recovered from her addiction, Morgan moved away from the Washington, D.C. metropolitan area. During her absence, Morgan spoke on the telephone with English–El on four or five occasions. Two months later, in September 1987, she returned to the Washington area and began seeing English–El on a regular basis. In late September or early October, Morgan and English–El became sexually involved. Morgan was still using cocaine at the time she became intimately involved with English–El.[2]

At some point after September 1987, Morgan discovered that English–El was married. The two continued their relationship, however, and discussed having a child. When Morgan moved to Georgia for a new job, she continued to see English–El during weekend visits. In May 1988, Morgan became pregnant with English–El's child.[3] A few months into the pregnancy English–El abruptly ended the relationship. Morgan testified that she then became depressed, could not sleep, felt humiliated, and her work performance suffered as a result of the stress. In February 1989, Morgan gave birth to their son. After the birth, Morgan developed eating disorders and became severely depressed.

On February 4, 1991, Morgan filed a four-count complaint against PIW and English–El alleging: 1) English–El committed medical malpractice and professional negligence by initiating and maintaining a personal relationship with Morgan, 2) PIW, based on the doctrine of *respondeat superior*, committed medical malpractice and professional negligence, 3) PIW was liable for negligently hiring, training, and supervising English–El, and 4) both PIW and English–El were liable for negligent infliction of emotional distress. Morgan sought damages for the emotional and mental distress she suffered during the pregnancy and after the birth of the child, as well as for the economic losses associated with that distress. In early 1992, appellees filed summary judgment motions which Morgan opposed. On April 1, 1993, the trial court required the parties to file additional briefs on the issue of damages. PIW also filed motions *in limine* seeking to preclude Morgan from recovering for past lost wages and for the stresses associated with being a single mother. On April 22, 1993, the trial court denied appellees' summary judgment motions without prejudice and denied PIW's motions *in limine* without prejudice pending development of the record.[4]

The case went to trial on April 25, 1993, and the jury heard five days of testimony. Appellees renewed their summary judgment motions on April 29, 1993. On April 30th, the trial court orally granted summary judgment for PIW and English–El on Morgan's claim for negligent infliction of emotional dis-

---

2. Morgan testified that she used cocaine three or four times during the three months after she left PIW and quit in early November 1987.

3. The issue of paternity was never contested in this case.

4. The April 22nd Order established that Morgan could seek damages for the stress of being pregnant and unmarried if supported by expert testimony that those stresses were proximately

caused by PIW's and English–El's negligence, for subsequent medical treatment and for lost wages. However, the trial court precluded Morgan from seeking damages for post-pregnancy emotional and mental distress, including the stress of: establishing paternity, securing child support, being the sole provider for her son when he is ill, or raising her son without the benefit of a husband for herself and father for her son.

tress (Count IV).[5] The court's oral rulings were later reiterated and expanded upon in two written orders dated May 4th.[6] Finding that Morgan's claimed mental and emotional distress was not legally cognizable in the absence of physical injury, the trial court granted appellees' renewed motion for summary judgment for PIW and English–El on the claim of negligent infliction of emotional distress (Count IV) for English–El on the claim of medical malpractice and professional negligence (Count I), and for PIW on the claim of negligent hiring, training and supervision (Count III). In a separate order also dated May 4th, the trial court granted PIW's motion for directed verdict on Morgan's claim of medical malpractice and professional negligence based on *respondeat superior* (Count II).[7] The trial court dismissed Morgan's complaint in its entirety.

Morgan filed a timely appeal contesting the trial court's grant of summary judgment for appellees on the claims of negligent infliction of emotional distress. PIW and English–El filed timely cross-appeals contesting various rulings by the trial court.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Nader v. de Toledano,* 408 A.2d 31, 41 (D.C.1979) (quoting Super.Ct.Civ.R. 56(c)). This court's review is the same as that for the trial court in considering whether a motion for summary judg-

ment should be granted. *Kuder v. United Nat'l Bank,* 497 A.2d 1105, 1106–1107 (D.C. 1985) (citing *Wyman v. Roesner,* 439 A.2d 516, 519 (D.C.1981)).

Morgan's position at trial and on appeal is that in the District of Columbia a showing of physical injury is not required to sustain a cause of action for negligent infliction of emotional distress. Alternatively, she argues that she did present sufficient evidence of physical injury to withstand a motion for summary judgment and directed verdict on her claim of negligent infliction of emotional distress.

This court expanded a plaintiff's ability to bring a cause of action for negligent infliction of emotional distress in *Williams v. Baker,* 572 A.2d 1062 (D.C.1990) (en banc). Prior to *Williams,* we followed the so-called "impact rule" under which a plaintiff could recover only for negligent infliction of emotional distress that resulted from a direct physical injury. *See Coughlin v. George Washington Univ. Health Plan, Inc.,* 565 A.2d 67, 71 (D.C.1989). Under the pre-*Williams* standard, while the physical injury need not be substantial in order to recover, "there nonetheless must be at least some physical injury." *Asuncion v. Columbia Hosp. for Women,* 514 A.2d 1187, 1189 (D.C.1986). *Williams* expanded a plaintiff's ability to recover for negligent infliction of emotional distress:

> [I]f the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress and any resultant physical injury, regardless of

5. Having heard Morgan's evidence at trial, the trial court also confirmed that Morgan could seek to recover for past lost wages and future medical costs.

6. PIW orally moved for a directed verdict on May 3, 1993, on the medical malpractice and professional negligence claim (Count II) and the claim of negligent hiring, training, and supervision of English–El (Count III), arguing that Morgan had not provided proof on the breach of the applicable standard of care. The trial court orally denied PIW's motion for directed verdict on May 4, 1993.

7. The trial court's order determined that PIW was not vicariously liable for English–El's conduct because it was outside the scope of his employment. On appeal, Morgan did not brief the issue regarding the trial court's order granting PIW's motion for directed verdict for medical malpractice and professional negligence based on *respondeat superior* (Count II). Therefore, it is not before us for consideration. PIW contends that because all of Morgan's alleged physical injuries and emotional distress stem from English–El's conduct, it is not liable to Morgan. PIW's argument ignores Count III, the claim for PIW's own negligence in hiring, training and supervising English–El.

whether plaintiff experienced a physical impact as a direct result of defendant's negligence.

*Williams, supra,* 572 A.2d at 1067.

In *Williams,* a mother on her own behalf and on behalf of her son, filed a complaint against a physician and hospital alleging medical malpractice and negligent infliction of emotional distress resulting from their alleged negligent diagnosis and treatment of her son. *Id.* at 1063. The court granted summary judgment for the hospital and physician on the claim that the mother brought in her own behalf, holding that the mother could not recover for emotional distress caused by witnessing her child suffer, because the mother did not reasonably fear for her own safety as a result of the alleged negligent conduct. *Id.*

Cases since *Williams* have restated the new "zone of danger" rule that permits recovery for negligent infliction of emotional distress even in the absence of physical injury. In *Jones v. Howard Univ., Inc.,* 589 A.2d 419 (D.C.1991),[8] this court held that a plaintiff could maintain an action for negligent infliction of emotional distress without sustaining any physical injuries if the plaintiff was within the "zone of danger" and if the emotional distress was both serious and verifiable. *Id.* at 423–24. In *Sowell v. Hyatt Corp.,* this court held that a restaurant customer could recover for negligent infliction of emotional distress as a result of eating food that contained a worm. 623 A.2d 1221, 1226 (D.C.1993). No showing of direct physical impact was required[9] because the customer was within the "zone of danger." *Id.* at 1225.

■ Morgan indicated to the trial court, and reiterates on appeal, that her case was not brought under the "zone of danger" theory for negligent infliction of emotional distress. In the case of a claim of negligence,[10] the only avenue left open for recovery under current law is a showing of direct physical injury resulting from the alleged negligence.[11] Morgan claims that her sexual relationship with English–El, combined with expert testimony on his exploitation of the transference phenomenon, satisfied the required showing of physical injury for summary judgment purposes. We agree.[12]

Morgan argued to the trial court that the sexual relationship resulted in an unwanted physical touching, thus establishing the physical impact or injury necessary to sustain her claim. The touching was alleged to be unwanted because Morgan did not have the requisite ability to willingly consent to the activity for two reasons. First, Morgan testified that she was still addicted to cocaine when the sexual relationship began in September or October 1987. Second, by exploiting the transference phenomenon,[13] English–

---

8. In *Jones,* the plaintiff underwent x-rays and surgery two weeks prior to discovering she was pregnant with twins. 589 A.2d at 421. Although the babies were born healthy, the mother sued the hospital and physician claiming malpractice and negligent infliction of emotional distress. *Id.* The court held that injury to the non-viable unborn twins from the procedures was tantamount to injury to the mother. *Id.* at 423–24.

9. The court noted that the plaintiff in *Sowell* could have also shown physical injury, if required, because the plaintiff tore her esophagus after repeated vomiting induced by the contaminated food. 623 A.2d at 1225.

10. Morgan did not seek to recover for any intentional tort such as battery.

11. Because we conclude that Morgan presented evidence of a physical injury, we do not address Morgan's contention that, in the context of the therapist-patient relationship where emotional, not physical injury is most likely to occur, a plaintiff need not prove physical injury in order to recover for negligent infliction of emotional distress.

12. Morgan also contends that her pregnancy, childbirth, abandonment, depression, sleeplessness, and eating disorder each by itself, and collectively, are sufficient allegations of physical injury to withstand a motion for summary judgment. We do not address these allegations, and instead focus on the sexual relationship.

13. The transference phenomenon was identified and explained during the trial as a patient's emotional reaction to a therapist, generally resulting in the projection of feelings by the patient onto the therapist. *See Simmons v. United States,* 805 F.2d 1363, 1364 (9th Cir.1986) ("Transference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist and is 'generally applied to the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past.' ") (citation omitted).

El created a situation where Morgan was unable to exercise control over her consent. According to Morgan, her inability to consent turned the sexual relationship into the functional equivalent of a sexual assault.

The trial court rejected Morgan's allegation that the sexual intercourse amounted to a physical injury after finding no testimony in the record indicating that the sexual relationship was either unwanted or unconsented. In finding consent, the trial court noted that Morgan herself testified that her relationship with English–El was mutually desired. In addition, the trial court did not find sufficient evidence in the record that Morgan's cocaine use inhibited her ability to consent. Noting that no evidence was presented as to the amount of cocaine used on each occasion, the court determined that the testimony offered concerning frequency of cocaine use was not sufficient to render Morgan unable to consent to sexual relations.

The trial court also found that there was insufficient evidence in the record to prove that Morgan's ability to consent to the sexual relationship was impaired by an alleged exploitation of the transference phenomenon. In its May 4th order, the trial court noted that there was "no testimony in the record that the exploitation of the transference phenomenon is tantamount to a physical injury."[14] The trial court, therefore, found that no evidence existed that the sexual relationship amounted to a physical injury.

It is on this point, whether or not the sexual intercourse amounted to a physical injury, that we disagree with the trial court. Morgan argued to the trial court that she did not have the requisite ability to consent to the sexual relationship and, therefore, the relationship was tantamount to an unwanted touching and sexual abuse.[15] From our independent review of the record, we ascertain that there was testimony concerning exploitation of the transference phenomenon that could undermine Morgan's ability to consent to sexual intercourse that would support a jury finding an unwanted sexual touching. This evidence of physical injury was sufficient to withstand a motion for summary judgment on a claim for negligent infliction of emotional distress.

One of Morgan's expert witnesses, Dr. Simon, provided the necessary testimony to establish physical injury. Dr. Simon was qualified as an expert in the areas of transference and sexual misconduct of therapists. In preparation of his testimony, he interviewed Morgan on a number of occasions and reviewed pertinent depositions in the case. Dr. Simon testified that a transference occurred between Morgan and English–El. Dr. Simon stated, "when you have someone who is a patient seeking health and care from someone who has knowledge to help that person to get better, then transference takes place in that kind of situation because of your neediness, because your need for help and here's someone who has the power to give you help, you look up to that person." In Dr. Simon's opinion, Morgan was damaged by English–El's abuse of the transference phenomenon in that Morgan became more disillusioned and untrusting of the potential treatment opportunities.

Dr. Simon testified that having a sexual relationship with a former patient within a few months after discharge was an exploitation of the transference phenomenon, and that English–El exploited the transference when he began intimate relations with Mor-

---

14. The relevant passage from the trial court's order of May 4, 1993, granting the motions for summary judgment and directed verdict states:

Counsel for Plaintiff has argued that the sexual intercourse and the eating disorder could be considered by the jury as evidence of a 'physical injury.' As has been stated more fully in the Court's oral findings, the eating disorder, which is the only 'physical injury' that Plaintiff testified to, is a symptom of the depression that she developed and is not the injury which resulted in mental distress. As to the sexual intercourse, there is no testimony from Plain-

tiff or any of the experts that the exploitation of the transference phenomenon is tantamount to a physical injury. Therefore, there is no evidence of a physical injury to submit to the jury for their consideration on the claim of negligent infliction of emotional distress.

15. The commission of a sexual act is a crime in the District where a person "knows or has reason to know that the other person is" incapable of appraising the nature of the conduct or incapable of declining participation. D.C.Code §§ 22–4103 –4105 (1996).

gan shortly after she had been in his care. The transference occurred at PIW when Morgan was feeling vulnerable, needy and inferior, and felt that the other counselors were not treating her with respect. English–El, on the other hand, paid attention to her, and was kind and supportive. It was during this time that Morgan and English–El engaged in hugging and romantic kissing, and when Morgan began to idolize English–El and to become very dependent on his support and approval. After discharge from PIW, Morgan continued to idolize and see English–El as her rescuer, reinforcing the notion of the existence of the transference phenomenon. According to Dr. Simon, the exploitation began at PIW with the hugging and kissing and extended to the months after discharge when Morgan and English–El became sexually intimate. Dr. Simon testified that, even assuming Morgan admitted being attracted to English–El and testified she voluntarily entered into a sexual relationship with him, this information did not alter his opinion that English–El had exploited the transference phenomenon because Morgan was in a desperate situation and saw in English–El the characteristics she wanted to obtain. Therefore, we conclude that Morgan presented sufficient evidence that, because of English–El's exploitation of the transference phenomenon, the sexual relationship between Morgan and English–El constituted an unwanted physical touching that, if proven, satisfied the legal requirement for physical injury in a claim for negligent infliction of emotional distress. Thus, we reverse the grant of summary judgment to PIW and English–El on the claims for negligent infliction of emotional distress. We also reverse the grant of summary judgment to English–El on the claims for medical and professional malpractice, and to PIW on the claim for negligent hiring, supervision and training of English–El, all of which the trial court granted on the ground that Morgan's injuries were not legally cognizable because Morgan did not suffer a physical injury.

## III.

In light of our holding that Morgan's alleged injuries, if proved, would sustain a finding that she suffered physical injury sufficient to permit her claim for mental distress, we address the issues raised on cross-appeal by PIW. First, PIW contends that the trial court abused its discretion in allowing Morgan's expert, Dr. McGovern, to testify, alleging that Dr. McGovern could not articulate or define the applicable standard of care. After extensive *voir dire* from all parties and the trial court, and over objections from PIW, Dr. McGovern was qualified as an expert to testify regarding the general national standard of care applicable to drug abuse counselors as reflected in the June 27, 1987, code of ethics for the National Association of Alcohol and Drug Abuse Counselors. Dr. McGovern could not, however, testify to nationwide standards prior to the adoption of the code in June of 1987, or to any applicable standard in existence within the District of Columbia.

■ As a preliminary matter, we note that it is within the trial court's broad discretion to determine whether a witness is qualified to testify as an expert, *Otis Elevator Co. v. Tuerr*, 616 A.2d 1254, 1256 (D.C.1992); *Dyas v. United States*, 376 A.2d 827, 832 (D.C.1977), and the trial court's ruling "either admitting or excluding such evidence will not be disturbed unless 'manifestly erroneous.'" *Dyas, supra*, 376 A.2d at 831 (quoting *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962)). In order to qualify as an expert, "the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Dyas, supra*, 376 A.2d at 832 (quoting E. CLEARY, McCormick on Evidence, § 13, at 29–31 (2d ed.1972)).

■ The trial court spent a considerable amount of time, in the absence of the jury, questioning Dr. McGovern regarding his precise credentials and qualifications to testify. Given that questioning, and in light of the trial court's limitations on the scope of Dr. McGovern's testimony to the applicable nationwide standard after the adoption of the 1987 code of ethics for the National Associa-

tion of Alcohol and Drug Abuse Counselors, we cannot say that the trial court abused its discretion in qualifying Dr. McGovern as an expert for the purpose of explaining a national standard of care.

Next, PIW contends that the trial court should have granted its oral motion for directed verdict made on May 3, 1993, because no proof was presented that it or English–El breached any applicable standard of care. PIW argues that even assuming Dr. McGovern's opinion was valid that the standard of care required a former patient to be fully recovered before his or her counselor could ethically pursue a romantic relationship, no testimony was presented as to whether Morgan had recovered from her addiction to cocaine before the start of her intimate relationship with English–El.[16]

■■■ Granting a directed verdict is appropriate "only if there is no evidentiary foundation, including all rational inferences from the evidence, by which a reasonable juror could find for the party opposing the motion, considering all the evidence in the light most favorable to that party." *Pazmino v. Washington Metro. Area Transit Auth.*, 638 A.2d 677, 678 (D.C.1994). This court employs the same test used by the trial court when reviewing a ruling on a motion for directed verdict. *Insurance Co. of N. Am. v. GMR, Ltd.*, 499 A.2d 878, 881 (D.C. 1985) (citing *Ceco Corp. v. Coleman*, 441 A.2d 940, 944 (D.C.1982)).

■ The trial court ruled that there was sufficient evidence in the record to deny PIW's motion for directed verdict on the issue of breach of the standard of care. Specifically, Dr. McGovern testified that a drug abuse counselor would be prohibited from sexual relations with a patient, including a former patient, until that patient had recovered from his or her addiction. In summarizing Dr. McGovern's testimony regarding the recovery of a patient from his or her

addiction, the trial court stated that the determination whether the patient had recovered could be made by either a professional or the patient. The trial court noted that no professional opinion was offered as to Morgan's recovery. However, Morgan herself testified that she used cocaine up until November 3, 1987, and that she did not consider herself recovered until after that date.

PIW notes that, in contradiction of the summary provided by the trial court, Dr. McGovern set out a three-pronged test to determine recovery. According to Dr. McGovern's testimony, physical detoxification, resumed mental clarity, and emotional well-being determine whether a patient is fully recovered. PIW contends that because no testimony was presented on the three prongs, there was no evidence in the record from which the jury could conclude that PIW and English–El had breached the applicable standard of care. However, Dr. McGovern was specifically asked if a former drug abuse patient who was still using drugs could be considered recovered. Dr. McGovern answered this question in the negative, indicating that a former drug abuse patient still using drugs is still in the throes of the addiction. Morgan's testimony that she used cocaine up until November 3, 1987, would bring Morgan within Dr. McGovern's description of a nonrecovered person. In light of the testimony of Dr. McGovern and Morgan, we agree with the trial court's decision to deny PIW's motion for directed verdict on the issue of breach of the standard of care.

### IV.

PIW argues in the alternative, assuming that Morgan is able to prove any of her claims, that it was nonetheless entered to summary judgment because Morgan may not recover for damages related to the birth and

---

16. PIW does not address the independent breach of the standard of care in Morgan's claim that PIW negligently hired, trained and supervised English–El. See note 6, *supra*. The trial court indicated—prior to deciding that Morgan's case failed on the issue of damages because there was no showing of physical injury—that there was sufficient evidence of breach of the standard of care to allow the claim against PIW for negligent hiring, training and supervision to go to the jury based on the testimony of Morgan, Mr. Marmo and Drs. McGovern and Simon, and PIW's own policies. PIW contends, however, that unless English–El is found to be negligent in the conduct of his relationship with Morgan, it is not liable to Morgan.

rearing of her child with English–El or for past lost wages or medical treatment.

Morgan sought damages for emotional distress associated with the stress of: 1) being pregnant and unmarried, 2) having to litigate paternity and child support, 3) being the sole provider for her son when he is ill, and 4) raising her son without the benefit of a husband for herself or a father for her son. The basis for these damages is that PIW and English–El negligently mishandled the transference phenomenon, which in turn led to English–El's intimate relationship with Morgan and the birth of their child to Morgan, who was unmarried and subsequently abandoned by English–El.

PIW moved for summary judgment, arguing that Morgan could not recover for emotional damages resulting from the stresses of being a single mother. In a ruling entered two weeks before granting summary judgment to PIW and English–El because Morgan failed to show physical injury, the trial court had denied PIW's pre-trial motion for summary judgment without prejudice, but had limited the damages that Morgan could claim.[17] The trial court held that Morgan's injuries were only compensable to the extent they were proximately caused by PIW's and English–El's medical malpractice.[18] Because English–El terminated the relationship with Morgan during the pregnancy, Morgan was permitted to seek recovery for the stress of being pregnant and unmarried, if supported by expert testimony that this stress was proximately caused by PIW's and English–El's negligence, and for treatment designed to alleviate its adverse effects. In its pretrial ruling, the trial court precluded Morgan from seeking damages beyond the pregnancy for the stress resulting from litigation regarding paternity issues, single motherhood stresses, and the stresses of being the sole provider of the child. These injuries were deemed by the trial court to have been "too remote and

attenuated" and not "reasonably foreseen by PIW" as a result of the mishandling of the transference phenomenon, but were instead "attributable to the particular consequences of the dissolution and aftermath of [the] relationship." In addition, the trial court noted that Morgan was precluded from seeking compensation beyond the pregnancy because such a claim presents the jury with personal issues regarding abortion, adoption and the value of a child's companionship, all of which are "particularly unsuited for the traditional adversarial process of a negligence action in a court of law." *Flowers v. District of Columbia*, 478 A.2d 1073, 1077 (D.C.1984) (holding that a plaintiff is not entitled to recover costs of rearing her healthy but unplanned child).[19]

On appeal, PIW asserts that the trial court erred in allowing Morgan to prove even those damages related to the stress of being pregnant and unmarried because those damages also are precluded as a matter of law under *Flowers*. Morgan, on the other hand, contends that *Flowers* is inapplicable because she is not seeking to recover for the costs of raising her child, but

> is seeking compensatory damages for her emotional distress which was proximately caused by the [appellees'] deviation from the standard of care for Drug Abuse Counselors when [appellee] English–El entered into a sexual relationship with his former patient and when the [appellee] PIW failed to train or supervise [appellee] English–El in his role as a Drug Abuse Counselor which would have prevented his damaging sexual relationship with the [appellant].

■ We agree with the trial court that the stress of being pregnant and unmarried was a stress Morgan suffered as a result of PIW's and English–El's allegedly negligent conduct, and may have resulted from the conduct which is the claimed basis of their

---

17. Previously, PIW had filed motions *in limine* to exclude recovery for the stresses of being a single mother and to exclude recovery of Morgan's past lost wages.

18. The trial court limited damages to those for which "the mishandling of the transference phenomenon was a direct and substantial cause and which were reasonably foreseeable in relation to

the breach of the appropriate standard of care." (citing *Psychiatric Inst. of Washington v. Allen*, 509 A.2d 619, 624 (D.C.1986)).

19. Morgan did not raise on appeal and we, therefore, do not address, the trial court's limitation on Morgan's ability to recover damages beyond the pregnancy.

negligence. If expert testimony supports the claim that this stress during pregnancy was proximately caused by PIW's and English–El's negligent mishandling of the transference phenomenon, then Morgan should be able to recover damages for such stress and the consequential cost of related treatment.

Finally, PIW contends that its motion for directed verdict on Morgan's claims of damages for past lost wages and cost of medical treatment should have been granted, because the amount of lost wages was speculative and the medical treatment was not proximately caused by PIW's conduct. As PIW notes in its brief, damages may not be based on mere speculation or guesswork. *Romer v. District of Columbia,* 449 A.2d 1097, 1100 (D.C.1982). At the same time, a party is not required to prove damages to a degree of mathematical certainty, *Designers of Georgetown, Inc. v. E.C. Keys & Sons,* 436 A.2d 1280, 1281 (D.C.1981), but must instead offer some evidence which allows the trier of fact to make a reasoned judgment. *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 549–50 (D.C.1981).

We find sufficient evidence in the record to allow the jury to make a reasoned judgment regarding damages of Morgan's past lost wages. Morgan testified that she worked as an analyst for Ford Motor Company from August of 1986 until August of 1987, earning a yearly salary of $30,000. Morgan was unemployed from August, 1987 to November, 1987, but was again employed from December, 1987 until December, 1989, by a different program within Ford Motor Company earning $32,500 a year. Morgan testified that, during 1990, 1991, and 1992, after her participation in the PIW program and her relationship with English–El, she held various jobs earning between seven and ten dollars an hour, but did not stay at a job for any length of time. Morgan sought to recover $20,500 in past lost wages, the difference between the amount of money she made while at Ford Motor Company before her admission into the PIW program and the amount earned afterward during 1990, 1991, and 1992. On the record before us, we conclude that a reasonable juror could make an

award for past lost wages, without engaging in mere speculation or guesswork.

PIW also contends that Morgan failed to prove that medical expenses claimed as damages were proximately caused by its conduct, and should have therefore been denied. Morgan was seeking to recover $22,600 for medical expenses related to therapy undertaken after her pregnancy for depression, eating disorders and neurosis. It is well settled that, in order to prevail in a medical malpractice action, "the plaintiff must prove, generally through expert testimony, that there was an applicable standard of care, that the defendant breached that standard, and that the breach was a proximate cause of the plaintiff's injuries." *Carmichael v. Carmichael,* 597 A.2d 1326, 1329 (D.C.1991) (citing *Psychiatric Inst. of Washington v. Allen,* 509 A.2d 619, 623–24 (D.C.1986)).

Contrary to PIW's position, Morgan provided expert testimony that PIW and English–El's negligent conduct was the proximate cause of her medical expenses. Dr. Ryan, a qualified medical expert, was asked on direct examination if he had an opinion to a reasonable degree of medical certainty as to what caused Morgan's depression, eating disorder, and neurosis. Dr. Ryan testified that Morgan's emotional conditions were caused by her relationship with English–El. Specifically, Dr. Ryan stated "not simply the relationship but the way it developed, the fact it developed when she was in a treatment center and she had a problem with addiction, that she had gone there to get help with, and she fell in love with one of the staff members there. And it had a terrible outcome for her." In addition, another expert, Dr. Afield, testified that in her opinion Morgan was severely depressed and had post-traumatic syndrome which reflected that Morgan was traumatized by the relationship with her counselor, English–El. We conclude that this expert testimony would support a jury finding that the alleged breach was a proximate cause of Morgan's injuries requiring medical treatment.

In summary, we conclude that Morgan has presented evidence of physical injury sufficient to overcome summary judgment on her

claims against English–El for alleged negligent infliction of emotional distress and medical and professional malpractice, and on her claim against PIW for negligent hiring, training and supervision.[20] We hereby reverse in part the trial court's order granting summary judgment for English–El and PIW and remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

**20.** We do not reverse the grant of summary judgment to PIW on Morgan's claims based on *respondeat superior.* See note 7, *supra.*