717 A.2d 346 (1998)
Tierney B. McCRACKEN, et al., Appellants,
v.
David WALLS-KAUFMAN, Appellee.
Nos. 97-CV-193, 97-CV-209.
District of Columbia Court of Appeals.
Argued January 7, 1998.
Decided September 10, 1998.
*348 Roger D. Luchs, with whom Kathleen D. Tammadge, Washington, DC, was on the brief for appellants.
Frank W. Dunham, Jr., with whom John C. Pasierb, Arlington, VA, was on the brief for appellee.
Before FARRELL and KING[*], Associate Judges, and BELSON, Senior Judge.
BELSON, Senior Judge:
Appellants Tierney McCracken and her husband Stephen McCracken appeal the trial court's orders dismissing their complaint against appellee David Walls-Kaufman as barred by the statute of limitations and denying their motion for reconsideration. The appellants' complaint alleged that appellee tortiously engaged in sexual acts with appellant Tierney McCracken during the time he was treating her as a chiropractor. The McCrackens contend that the trial court erred in concluding that their complaint stated only a claim for assault, to which a one-year period of limitations applies, and in ruling as a matter of law that Mrs. McCracken was not non compos mentis at relevant times and that thus the statute of limitations was not tolled until she was capable of pursuing her claim. In addition, they contend that the trial court abused its discretion in denying their motion for reconsideration. We reverse and remand for further proceedings.

I.
In a complaint filed on September 3, 1996, appellants Tierney and Stephen McCracken alleged that appellee David Walls-Kaufman, while serving as Mrs. McCracken's chiropractor during a period of time beginning in December 1994, "sexually assaulted" her on several occasions.[1] During this time, appellants alleged, Mrs. McCracken "discussed numerous personal matters with [appellee] affecting her psychological well-being, and was counseled by him in connection therewith." According to appellants, Dr. Walls-Kaufman was aware at that time that Mrs. McCracken was taking medication "which limited her ability to prevent the behavior described." Appellants' complaint asserted that these "sexual assaults" violated applicable standards of care and ethical considerations as well as District of Columbia law, "constituted acts of malpractice, breach of fiduciary duty, and/or negligence," and caused Mrs. McCracken to suffer emotional distress for which she required both in-patient and out-patient psychiatric care.
Dr. Walls-Kaufman responded to this complaint not only with an answer denying the *349 allegations, but also with a motion to dismiss in which he contended that because the McCrackens' claims arose from sexual assaults that occurred in December of 1994 they were barred under the one-year statute of limitations for assault claims under D.C.Code § 12-301(4) (1995). He argued that their complaint described only "knowing, intentional" actions, but failed to "describe any negligent act or characterize any duty whose breach may have resulted in negligence," and therefore failed to state a negligence claim upon which relief could be granted.
The McCrackens filed an opposition to the motion to dismiss, along with attached affidavits of both appellants. They argued that a three-year statute of limitations applied because the complaint contained allegations of breach of fiduciary duty, malpractice, and negligence. They posited that D.C.Code § 22-4115 (1981), which makes it a crime under specified circumstances for an individual who purports to provide professional medical or counseling services to engage in a sexual act with a client or patient, provides a standard of care to which appellee failed to adhere. In a footnote, the McCrackens stated that although they used the term "assault" in the complaint, the actual conduct described in Mrs. McCracken's affidavit "may not fit the ordinary legal definition of assault." In addition, they argued that even if the one-year statute of limitations applied, Mrs. McCracken was non compos mentis at the time the cause of action arose, and therefore the statute of limitations was tolled until "Spring, 1996," when she began "to function as a normal individual."
Mrs. McCracken's attached sworn affidavit stated that during the course of Dr. Walls-Kaufman's chiropractic treatment she discussed personal matters with him and that he in turn offered advice and counseling, that she had been addicted to Valium previously and became addicted again following her first sexual encounter with appellee, and that Dr. Walls-Kaufman sodomized her for the first time in December of 1994, then again on approximately a half dozen occasions through August 10, 1995. During the first encounter, Mrs. McCracken stated, she "froze up, and disassociated [herself] from the situation," although she had initially "pushed his hands away," and afterwards "told [him] that this was never to happen again." During the subsequent sexual encounters, Mrs. McCracken stated, she "did not know how to deal with this situation, [she] believe[d] in part because of the excessive doses of valium [she] was taking." The affidavits of both Mr. and Mrs. McCracken indicated that Mrs. McCracken's ability to live a normal life was impaired significantly for a period of time following her final sexual encounter with appellee.
In his reply to appellants' opposition to the motion to dismiss, Dr. Walls-Kaufman argued that appellants could not avail themselves of the non compos mentis exception to the statute of limitations because they could not prove that Mrs. McCracken was non compos mentis at the time of the assaults, and because they had failed to prove her lack of capacity to sue. He also argued that Mrs. McCracken's claimed disability did not meet the legal definition of non compos mentis. In a subsequently submitted affidavit, filed December 31, 1996, Dr. Walls-Kaufman stated that on August 11 or 12, 1995, an officer of the Metropolitan Police Department informed him that Mrs. McCracken had reported that he had raped her. In that affidavit, Dr. Walls-Kaufman denied raping or sexually assaulting Mrs. McCracken. Id. His reply to the opposition to the motion to dismiss pointed to this report of rape by Mrs. McCracken as indicating that she was aware of her legal rights at the time of the alleged sexual assaults and therefore could not have been non compos mentis.
On January 3, 1997, the trial court granted Dr. Walls-Kaufman's motion to dismiss, concluding that the McCrackens' sole claim was for assault, a claim that was barred by a one-year statute of limitations under D.C.Code § 12-301(4) (1995). The trial court concluded that the McCrackens had failed to state a claim for negligence because the allegations of sexual assault "in no way relate[d] to the services provided by a chiropractor," and because they had failed to allege that Dr. Walls-Kaufman "breached any duty regarding the care of her back or any medical *350 service provided by a chiropractor." The trial court rejected appellants' non compos mentis claim, finding that Mrs. McCracken's August 1995, report of rape demonstrated she was "able to assert her legal rights" at the time of the alleged assault.
The McCrackens filed a timely motion for reconsideration under Super.Ct.Civ.R. 59. The trial court concluded that, although the correct approach was to consider the motion as filed under Super.Ct.Civ.R. 60(b) rather than Rule 59, the McCrackens' motion failed to qualify for relief under either and therefore denied it.

II.
The McCrackens contend on appeal that the trial court erred in granting Dr. Walls-Kaufman's motion to dismiss because their complaint stated claims for malpractice, breach of fiduciary duty, and negligence that would not be time-barred under the three-year statute of limitations that applies to such actions. In addition, they contend that even if a one-year statute of limitations must be applied to their claim, the trial court erred in ruling as a matter of law that Mrs. McCracken was not non compos mentis at relevant times and that thus the statute of limitations was not tolled until she was capable of pursuing her claim. Finally, the McCrackens contend that the trial court abused its discretion in denying their motion for reconsideration.
The trial court granted appellee's motion to dismiss pursuant to Super.Ct.Civ.R. 12(b)(6) for failure to state a claim upon which relief could be granted. This court reviews an appeal from a grant of a motion to dismiss under Super.Ct.Civ.R. 12(b)(6) de novo. Fraser v. Gottfried, 636 A.2d 430, 432 n. 5 (D.C.1994). We will uphold the dismissal only if "it appears beyond a doubt that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." Id. at 432.

III.
In order to decide whether the trial court properly granted appellee's motion to dismiss, we must first determine whether appellants' complaint set out a claim only for assault or battery or other intentional tort, to which the one-year period of limitations of D.C.Code § 12-301(4) applies, or whether in addition to or instead of such a claim appellants' complaint stated a claim of a different nature that is governed by the three-year period of limitations prescribed by D.C.Code § 12-301(8) (1995). To do so, we must look beyond the conclusory terms of the pleadings to the substantive elements of any alleged causes of action. See Maddox v. Bano, 422 A.2d 763, 764-65 (D.C.1980). When an action is alleged under the broad rubric of medical malpractice, it is the underlying act that is the basis for the alleged malpractice that determines the applicable period of limitations. See Saunders v. Nemati, 580 A.2d 660, 663 (D.C.1990) (citing Canterbury v. Spence, 150 U.S.App. D.C. 263, 284, 464 F.2d 772, 793, cert. denied, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972)).
In their pleadings, the McCrackens alleged that appellee, while engaged in a chiropractor-patient relationship with Mrs. McCracken, "sexually assaulted" her on several occasions, breaching the applicable standard of care and causing her injury. The allegations of the complaint are undoubtedly sufficient to state a cause of action for assault and battery, but we must determine whether they also state a claim for other tortious conduct. This court has recognized that the same course of conduct may give rise to claims of both assault and battery and negligence if the necessary predicates for both are shown to exist. In Etheredge v. District of Columbia, 635 A.2d 908 (D.C.1993), we reversed a trial judge's grant of a judgment notwithstanding the verdict as to the vicarious liability of the District of Columbia for the shooting of a suspect by a police officer. We held that the evidence presented at trial supported the jury's verdict finding the District of Columbia vicariously liable for both assault and battery and negligence on the basis of a single shooting incident, and explained that "[t]he question with respect to the assault and battery claim is whether [the officer] initially shot [the victim] without legal justification. The negligence claim hinges on whether [the officer], (when he shot *351 [the victim]), failed to act as a reasonably prudent police officer would have acted." Id. at 918. Plaintiff Etheredge emphasized alleged deficiencies in the handling of the situation by the parties in the moments immediately before the shooting.
Etheredge, therefore, established that the same course of conduct may support both a claim of assault and battery and a claim of negligence, provided that it is established that the defendant, in the process of engaging in the conduct that included the intentional tort, was also breaching another recognized duty owed the plaintiff.
In a case more analogous to the case before us involving a psychiatrist who had sexual relations with his female patient, the Supreme Court of California stated:
In such a case, the psychiatrist has breached both the duty imposed on everyone to refrain from intentionally injuring another and the special duty that a psychiatrist owes to his patient to use due care for the patient's health in the conduct of the therapist-patient relationship.
Waters v. Bourhis, 40 Cal.3d 424, 220 Cal. Rptr. 666, 709 P.2d 469, 476 (1985) (en banc).
In this case, the McCrackens argue that such a duty existed by virtue of the professional standard of care to which Dr. Walls-Kaufman was obliged to adhere, combined with the relationship of trust that existed between the defendant and the plaintiff. Such a claim will not succeed if the plaintiff does no more than present conclusory allegations of "negligence"; rather, as this court has stressed, a plaintiff must allege a departure from an applicable standard of care on the part of the defendant. See District of Columbia v. Tinker, 691 A.2d 57, 64 n. 6 (D.C.1997); compare Maddox, supra, 422 A.2d at 764-65 ("The terms `carelessly and negligently' are conclusory assertions, and without more the complaint does not raise a cognizable claim of negligence. . . .") with Etheredge, supra, 635 A.2d at 918 (recognizing that claims of assault and battery and negligence were separate, though "related," because plaintiff had presented evidence that defendant departed from applicable standard of care).
To determine whether the McCrackens adequately alleged a breach of a duty owed them by Dr. Walls-Kaufman, we must consider whether, and if so under what circumstances, a chiropractor may be liable for professional malpractice based on negligence for engaging in sexual activity with a patient that results in injury to the patient. The issue is one of first impression in this jurisdiction.[2] Many courts have taken the view that a person engaged in the healing arts, other than those practicing in psychiatry, psychology, and like fields, may be liable for medical malpractice based on a sexual relationship with a patient only if the doctor represents to the patient that sex is a part of the treatment. See, e.g., Simmons v. United States, 805 F.2d 1363, 1366 (9th Cir.1986) ("[C]ourts do not routinely impose liability upon physicians in general for sexual contact with patients.") (dicta); Atienza v. Taub, 194 Cal.App.3d 388, 239 Cal.Rptr. 454, 457 (1987) ("The relevant authorities . . . agree that a physician who induces a patient to enter into sexual relations is liable for professional negligence only if the physician engaged in the sexual conduct on the pretext that it was a necessary part of the treatment for which the patient has sought out the physician."); Collins v. Covenant Mut. Ins. Co., 604 N.E.2d 1190, 1196 (Ind.App.1992) ("The general rule is that a physician's sexual relationship with a patient does not constitute rendition of health care services, and is not actionable as medical malpractice."); Odegard v. Finne, 500 N.W.2d 140, 142-43 (Minn.Ct.App.1993) (same).
*352 In a separate category are professionals such as psychiatrists and psychologists whose role it is to counsel patients, and who allegedly breached the standard of care applicable to their profession by engaging in sexual relations with a patient, resulting in injury to the patient. See MacClements v. LaFone, 104 N.C.App. 179, 408 S.E.2d 878, 880 (1991), review denied, 330 N.C. 613, 412 S.E.2d 87 (1992); Weaver v. Union Carbide Corp., 180 W.Va. 556, 378 S.E.2d 105, 107 (1989) ("The basis of the malpractice is the trust relationship that arises from such counseling services, which are designed to improve the mental and emotional well-being of the patient."); Simmons, supra, 805 F.2d at 1365. This court recognized the potential for liability in such cases in Carmichael v. Carmichael, 597 A.2d 1326 (D.C.1991). There we deemed sufficient to establish a breach of the applicable standard of care the testimony of an expert that "introducing sexual relations into such a [psychiatrist-patient] relationship is `fundamentally . . . a betrayal of the patient, because the very essence of trust in psychotherapy is that impulses will not be acted on' and because `sexual relations with a father figure are entirely inappropriate.'" Id. at 1329.[3]
Some courts have imposed liability, however, in a narrowly defined category of cases not involving mental health professionals in which, in addition to the physician-patient relationship, there was also a special relationship of trust and confidence between the doctor and the patient and the doctor abused that trust by engaging in sexual activity with the patient causing injury. In Hoopes v. Hammargren, 102 Nev. 425, 725 P.2d 238, 242-43 (1986), the Supreme Court of Nevada held that a neurosurgeon could be held liable, based on breach of fiduciary duty, for engaging in a sexual relationship with a patient, provided the patient could show that the neurosurgeon "held a superior authoritative position in the professional relationship," that he violated his fiduciary responsibilities by exploiting her vulnerabilities, and that the exploitation was the proximate cause of her claimed harm. See also Dillon v. Callaway, 609 N.E.2d 424 (Ind.Ct.App.1993) (medical doctor, who began scheduling counseling sessions with patient after being unable to ascertain physical cause for her symptoms, could be found liable for medical malpractice for inducing patient to engage in sadomasochistic sexual relationship under guise of treatment).
We hold that if a medical professional not practicing in the field of mental health enters into a relationship of trust and confidence with a patient and offers counseling on personal matters to that patient, thus taking on a role similar to that of a psychiatrist or psychologist, that professional should be bound by the same standards as would bind a psychiatrist or psychologist in a similar situation. See Dillon, supra, 609 N.E.2d at 428 (physician who acted as patient's therapist, even though "not a practicing psychiatrist," was appropriately held to standard of therapist); Shamloo v. Lifespring, Inc., 713 F.Supp. 14, 17 (D.D.C.1989) ("[District of Columbia] case law does not hold that an unlicensed purveyor of `professional' psychological services should be afforded greater protection from claims of negligence or malpractice than a licensed one."); cf. Correll v. Goodfellow, 255 Iowa 1237, 125 N.W.2d 745, 749 (1964) (chiropractor held to standard of care of medical doctor when he left realm of standard chiropractic techniques by administering ultra-sonic treatments to a patient's foot).
Therefore, as a medical professional, Dr. Walls-Kaufman can be found liable in tort for medical malpractice if it is found that he engaged in sexual acts with his patient, Mrs. McCracken, and if the McCrackens *353 have established the following: that in the course of Dr. Walls-Kaufman's chiropractic treatment of Mrs. McCracken, a relationship similar to a psychologist-patient relationship developed between the two; that it was a breach of the applicable standard of care for Dr. Walls-Kaufman to engage in sexual acts with Mrs. McCracken during the course of or attendant to that relationship; and that the breach of the standard of care by Dr. Walls-Kaufman proximately caused Mrs. McCracken's claimed injuries.[4] Because in actions for medical malpractice issues such as the applicable standard of care and causation are not "within the ken of the average lay juror," appellants will be required to establish them through expert testimony.
With respect to the standard of care, we cannot assume the availability on remand of potential expert witnesses who are qualified to testify concerning a standard of care that applies specifically to chiropractors who engage in the sort of therapy and other conduct alleged here. It may be appropriate and necessary to rely upon the testimony of an expert medical ethicist or other expert, who can testify as to existing standards of care that are followed with respect to practitioners in fields other than mental health, who become engaged in giving counsel or advice to patients similar to that usually given by psychologists or psychologists. It may also be developed on remand that an expert witness from the field of psychology or psychiatry will prove qualified to identify the standard of care that is observed generally by members of the medical and related healthcare fields with respect to engaging in sexual relationships with one whom the practitioner is counseling. It is for the McCrackens' counsel in the first instance to offer appropriate expert testimony, and for the trial judge to pass upon the qualifications of the proffered experts and the adequacy of their testimony, to create an issue of fact for the jury. See Ornoff v. Kuhn & Kogan Chartered, 549 A.2d 728, 731 (D.C.1988).
In addition, it will be incumbent upon the McCrackens to adduce expert testimony that establishes, to a reasonable degree of medical certainty, that the injuries claimed by Mrs. McCracken were proximately caused by Dr. Walls-Kaufman's breach of an applicable standard of care. See Lasley v. Georgetown Univ., 688 A.2d 1381, 1384 (D.C. 1997) ("Our rule for medically complicated cases is that proof of causation normally requires medical opinion testimony"); see also Morgan v. Psychiatric Inst. of Wash., 692 A.2d 417, 426 (D.C.1997).
To withstand a motion to dismiss under Rule 12(b)(6), however, appellants had only to make factual allegations that, if proved, would entitle them to relief.[5]See Vincent v. Anderson, 621 A.2d 367, 372 (D.C.1993). Based on the foregoing discussion, we conclude that they did so by alleging that Dr. Walls-Kaufman had discussed with Mrs. McCracken numerous personal matters affecting her psychological well-being and counseled her about them, thus going beyond the usual chiropractor-patient relationship. Thus, the trial court erred in dismissing the complaint insofar as it alleged tortious conduct other than assault.
Before considering the McCrackens' argument that they should also be permitted on remand to pursue their claim of assault, we address briefly a further argument they make in support of their malpractice claim. In addition to arguing that they can establish an applicable standard of care by adducing *354 expert testimony, the McCrackens invoke D.C.Code § 22-4115 (1981), which provides:
(a) a person is guilty of first degree sexual abuse who purports to provide, in any manner, professional services of a medical, therapeutic, or counseling . . . nature, and engages in a sexual act with another person who is a patient or client of the actor, or is otherwise in a professional relationship of trust with the actor; and
. . . .
. . . (2) the nature of the treatment or service provided by the actor and the mental, emotional, or physical condition of the patient are such that the actor knows or has reason to know that the patient or client is impaired from declining participation in the act.
The McCrackens argue that this statute confirms their right to proceed against Dr. Walls-Kaufman with an action in tort. Violation of a statute may give rise to a civil cause of action, and may constitute negligence per se if the statute is meant to promote safety, if the plaintiff is "`a member of the class to be protected' by the statute," and if the defendant is a person "upon whom the statute imposes specific duties." Marusa v. District of Columbia, 157 U.S.App. D.C. 348, 354, 484 F.2d 828 (1973) (quoting Whetzel v. Jess Fisher Management Co., 108 U.S.App. D.C. 385, 389, 282 F.2d 943 (1960)).
It would be inappropriate for this court to pass on the issue of whether this statute was adopted in order to promote public safety on the limited record before us. While appellants' arguments on this issue are substantial, it is preferable to give the parties the opportunity to make a more complete record on this issue, and for the trial court to rule upon it in the first instance. Should the trial court conclude that such was the purpose of the statute, the court should proceed in accordance with the principles we set forth in McNeil Pharm. v. Hawkins, 686 A.2d 567 (D.C.1996), Zhou v. Jennifer Mall Rest., 534 A.2d 1268 (D.C.1987), Ceco Corp. v. Coleman, 441 A.2d 940 (D.C.1982), and the other authorities they cite.[6]

IV.
Appellant also contends that the trial court erred in ruling as a matter of law that appellant was not non compos mentis at the time of the alleged assaults. We reach this issue because on remand the court may be called upon to consider a claim of assault subject to a one-year period of limitation, as well as other tort claims subject to a three-year period of limitation. Because the trial court considered affidavits and exhibits in ruling on this aspect of appellee's motion to dismiss, one of which was essential to the court's ruling, this part of the motion was converted to a motion for summary judgment under Super.Ct.Civ.R. 56 and must be reviewed as such. See Knight v. Furlow, 553 A.2d 1232, 1233 (D.C.1989). In reviewing the grant of a motion for summary judgment, we apply the same standard as the trial court, affirming "only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law." Willis v. Cheek, 387 A.2d 716, 719 (D.C.1978).
A person is mentally unsound for purposes of tolling civil statute of limitations when the "disability is of such a nature as to show [plaintiff] is unable to manage his business affairs or estate, or to comprehend his legal rights or liabilities." Speiser v. U.S. Dept. of Health & Human Servs., 670 F.Supp. 380, 384 (D.D.C.1986) aff'd, 260 U.S.App. D.C. 229, 818 F.2d 95 (C.A.D.C. 1987) (quoting Decker v. Fink, 47 Md.App. 202, 207, 422 A.2d 389, 392 (1980)) (alteration in original). "[I]mpaired judgment alone is not enough to toll the statute of limitations." Id.; see also Hendel v. World Plan Exec. Council, 705 A.2d 656, 665 (D.C.1997). Under District of Columbia law, such disability must exist "at the time the right of action accrues." D.C.Code § 12-302 (1995).
The trial court stated that appellants "failed to produce sufficient evidence to prove" that Mrs. McCracken was non compos mentis at the time her claim accrued because they did not supply the court with expert testimony regarding her alleged condition, and because the fact that Mrs. *355 McCracken "apparently"[7] reported to the police that she had been raped by the appellee in August of 1995 indicated that she was aware of her legal rights. Mrs. McCracken stated in her affidavit that she began taking high doses of Valium after the first incident of sexual contact with Dr. Walls-Kaufman. She also stated that she began losing her ability to handle ordinary affairs and take care of her daily needs in January 1995, a condition that continued until "Spring, 1996." During this period, she stated, at times she would just "lie on the floor curled up in a ball." Mr. McCracken stated in his affidavit that Mrs. McCracken was "unable to function as a normal person" during this period of time.
The McCrackens' affidavits created a genuine issue of material fact as to whether Mrs. McCracken was rendered non compos mentis at the time a substantial portion of her right of action accrued, so as to toll the statute of limitations as it pertains to her claim.[8] Although she does not claim that she was non compos mentis prior to the first sex act with Dr. Walls-Kaufman, her allegations suggest that she may have been rendered so by that act, and thus under a disability at the time of other claimed acts, the last of which she claimed occurred on August 10, 1995.[9] That she may have reported a rape to the police does not demonstrate as a matter of law that Mrs. McCracken was substantially aware of her legal rights, including any civil cause of action that may have been available to her, at the time of the alleged incidents.
Expert testimony regarding Mrs. McCracken's mental state was not necessary to withstand a motion for summary judgment. Cf. Harris v. District of Columbia, 601 A.2d 21, 24 (D.C.1991) ("[T]his jurisdiction permits lay persons to testify, based on their personal observations, as to whether a person appeared to them to be sane or insane.") (citing United States v. Pickett, 152 U.S.App. D.C. 346, 348, 470 F.2d 1255, 1257 (1972)); Butler v. Harrison, 578 A.2d 1098, 1101 (D.C.1990) ("[L]ay opinion testimony is admissible on the issue of mental capacity.") (citing In re Estate of Wilson, 416 A.2d 228, 236 n. 14 (D.C.1980)). The trial judge, therefore, erred in granting summary judgment in favor of the appellee.[10]
Appellants' pleadings, therefore, set forth sufficient allegations to withstand a motion to dismiss pursuant to Super. Ct. Civ. R. 12(b)(6). In addition, their pleadings, along with affidavits submitted by the parties, created a genuine issue of material fact regarding whether Mrs. McCracken was non compos mentis at the time her claim accrued so as to toll the statute of limitations as it applied to her claim. Accordingly, we reverse the trial court's order dismissing appellants' complaint and remand for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[*] Judge King was an Associate Judge at the time of argument. His status changed to Associate Judge, Retired, on September 1, 1998.
[1] Appellee contends that appellant Stephen McCracken failed to appeal the dismissal of his loss of consortium claim. This contention has no merit, as Mr. McCracken joined Mrs. McCracken in filing notices of appeal from both the trial court's dismissal of the plaintiffs' complaint and its denial of their motion for reconsideration.
[2] In Morgan v. Psychiatric Inst. of Wash., 692 A.2d 417 (D.C.1997), this court reversed a midtrial grant of summary judgment (and on certain counts, a directed verdict) on the claims of negligent infliction of emotional harm and medical and professional malpractice against the Psychiatric Institute and its substance abuse counselor, who had entered into a sexual relationship with a former patient, allegedly resulting in psychological injury to the patient. The focus of the relevant part of the opinion was on whether plaintiff had presented enough evidence for a jury to conclude that the sexual relationship between her and her substance abuse counselor constituted an unwanted physical touching that could satisfy the "physical injury" required for plaintiff to recover for negligent infliction of emotional harm as well as malpractice. Id. at 423.
[3] Carmichael is one of numerous cases from various jurisdictions that have dealt with what is termed "transference," the process through which a patient may "transfer" feelings he or she has toward other figures in his or her life (i.e., mother, father, spouse) onto his or her therapist. It is thought by some experts to be something a psychiatrist or psychologist is uniquely trained to handle, as they "offer a course of treatment and counseling predicated upon handling the transference problem." See also Simmons, supra, 805 F.2d at 1364. Negligent mishandling of this process, therefore, is used as a basis for maintaining a medical malpractice action against such practitioners. See id. at 1365 ("Courts have uniformly regarded the mishandling of transference as malpractice or gross negligence."); Morgan, supra note 2 692 A.2d at 421-22.
[4] Consent to the sexual acts, freely and competently given, would be a defense to such a theory of liability. Whether a particular plaintiff is capable of consenting to such a relationship is a question of fact to be determined at trial. It cannot be said as a matter of law that any patient who is involved to some degree in a relationship of trust and confidence with a medical professional and has received advice and counseling is incapable of consenting to a sexual relationship with that professional.
[5] In an affidavit filed with the McCrackens' opposition to the motion to dismiss, Mrs. McCracken also averred that in the course of her relationship with Dr. Walls-Kaufman, he counseled her regarding her relationship with her mother, actions of a sexual nature taken against her by her mother when Mrs. McCracken was a child, and her addiction to Valium. This affidavit was not part of her pleadings for purposes of Rule 12(b)(6) analysis, but does serve to illustrate what facts could be shown to establish the allegations in the complaint.
[6] Because this statute became effective on May 23, 1995, only those violations taking place after that date could be found to constitute negligence per se.
[7] This information came from an affidavit supplied by appellee.
[8] Mrs. McCracken's condition cannot serve to toll the statute of limitations on Mr. McCracken's claim. See Emerson v. Southern Ry. Co., 404 So.2d 576, 580 (Ala.1981) ("[T]he derivative claim for loss of consortium of a spouse or parent is not subject to the tolling statute of the infant or incompetent."); Wold v. Jeep Corp., 141 Mich.App. 476, 367 N.W.2d 421, 421 (1985) (holding that the disability that tolled the statute of limitations on appellant's wife's claim could not be used to toll appellant's own loss of consortium claim).
[9] The United States Court of Appeals for the D.C. Circuit has refused to toll the running of the statute of limitations where "the disability occurred or arose subsequent to the origin of the cause of action." Taylor v. Houston, 93 U.S.App. D.C. 391, 392, 211 F.2d 427 (1954). In Taylor, however, the court distinguished the facts of that case, in which the disability arose twelve days after the cause of action arose, and was removed "almost five months" before the statute of limitations had run, from cases in which "the disability arises a very short period of time after the injury and persists throughout the entire limitation period." Id. In the latter cases, the court opined, "strong equitable considerations might militate against application of this rule." Id.
[10] Because we have already ruled in favor of the McCrackens on their appeal from the initial order, we need not separately consider their appeal from the trial judge's denial of their motion for reconsideration.