774 So.2d 41 (2000)
James M. HALL and Betty Jo Hall, individually, and as the natural guardians of Larry Joseph Hall, a minor, and Joe Bohannon, as guardian of the property of Larry Joseph Hall, Appellants,
v.
M. Naveed ANWAR, M.D., and DeSoto Memorial Hospital, Inc., d/b/a DeSoto Memorial Hospital, Appellees.
No. 2D99-16.
District Court of Appeal of Florida, Second District.
October 11, 2000.
Rehearing Denied December 14, 2000.
*42 Hank B. Campbell and Stephen B. French of Lane, Trohn, Bertrand & Vreeland, P.A., Lakeland, and Jonathon Stidham of Stidham & Stidham, P.A., Bartow, for Appellants.
Thomas M. Hoeler of Burton, Schulte, Weekley, Hoeler, Poe & Robbins, P.A., Tampa, for Appellee M. Naveed Anwar.
Esther E. Galicia of George, Hartz, Lundeen & Fulmer, Fort Lauderdale, for Appellee DeSoto Memorial Hospital, Inc.
ALTENBERND, Judge.
The parents and guardian of Larry Joseph Hall, a minor, appeal the trial court's denial of a motion for new trial after a jury rendered a verdict in favor of the defendants, DeSoto Memorial Hospital and Dr. M. Naveed Anwar, in a medical malpractice action. During the trial the Halls maintained that Dr. Anwar and agents of the hospital proximately caused severe injury to their child at the time of his birth. On appeal, they argue that the deposition of a medical ethicist with no formal medical education was improperly admitted into evidence. We agree that the trial court erred by allowing the jury to consider the content of the deposition. However, after a full review of the lengthy record in this case, we conclude that the error was harmless. We find no reversible error in the other issues presented on appeal and affirm those without further comment.
The Halls' child was born prematurely. When born, he appeared blue, flaccid, and limp, and weighed only 822 grams. Dr. Anwar and the hospital nurses made attempts to resuscitate the infant for approximately eleven minutes. Although the nurses involved in this process recorded a decreasing heart rate during this time, Dr. Anwar testified he did not personally hear any heart beat, and he eventually recorded an initial Apgar score of zero, which denotes that there was no heartbeat at birth. After eleven minutes, Dr. Anwar declared the child dead and stopped all efforts to resuscitate him. The body was wrapped in a blanket and placed in a warmer.
Fifteen minutes later, a technician noticed that the infant was grimacing and attempting to cry. Dr. Anwar returned to the operating room and resumed efforts to resuscitate the child. The child survived but suffers from various conditions including severe brain damage.
At trial, the malpractice allegations centered around whether the hospital's agents were negligent in their record keeping and whether Dr. Anwar and the nurses involved in the initial effort to resuscitate the infant were negligent in performing this particular task.[1] Specifically, the Halls asserted that Dr. Anwar and the nurses should have continued their efforts beyond eleven minutes. Each party below presented numerous medical experts in varying medical fields to provide opinions as to whether the care Dr. Anwar and the hospital's agents provided for the infant was within the appropriate medical standard of care, and whether the baby's injuries *43 were a result of negligence on the part of the medical professionals or whether they were inflicted prior to birth as a result of events occurring during the pregnancy.
Dr. Anwar and the hospital presented experts who opined that internal conditions during the pregnancy caused all of the infant's injuries, and that terminating resuscitation was appropriate and did little or nothing to increase the damage the infant had already suffered. Dr. Anwar also asserted that all of his actions in caring for the infant were within the professional standard of care.
To further buttress his case, Dr. Anwar presented the videotaped deposition testimony of Father John Paris, a Catholic priest and a professor of bioethics. This deposition had been taken during discovery by the Halls' attorney without any cross-examination by the defendants. Father Paris is an expert in the area of medical ethics. He has spent significant time in hospitals and engaged in professional activities in conjunction with medical professionals. His testimony exhibits a significant knowledge of medical procedures and protocol. Nonetheless, he has had no medical training.
Despite his religious affiliation, Dr. Paris's position as a priest was not over-emphasized, and his testimony did not concentrate on religious doctrine.[2] Rather, he attempted to provide an expert opinion that Dr. Anwar's actions concerning all aspects of the resuscitation of the infant were "appropriate" and "within the standard of care." Interestingly, he did not opine that the conduct was "ethical," which was perhaps his only field of expertise. Though his opinions continually strayed into areas involving medical expertise, Father Paris qualified his opinion on more than one occasion by pointing out his lack of formal training.
Allowing the testimony of this medical ethicist in this medical malpractice case was error. Father Paris was not qualified to render opinions about a medical standard of care. See §§ 90.702, 766.102(2)(c), Fla. Stat. (1997). See also Jordan v. State, 694 So.2d 708 (Fla.1997) (holding witness may not testify to matters that fall outside area of expertise); Barrio v. Wilson, No. 2D99-419, slip op., ___ So.2d ___, 2000 WL 1299347 (Fla. 2d DCA Sept. 15, 2000) (holding pulmonary specialist not qualified to opine on standard of care of emergency room physician). If Father Paris had testified solely as to whether it was moral or ethical to resuscitate or terminate resuscitation of the infant, then his testimony would have been irrelevant to the legal issue of negligence.
We recognize that some medical standards of care are influenced by medical ethics. A decision concerning the termination of resuscitation efforts is probably an example of an area in which the standard of care includes an ethical component. The standard of care, however, still involves the level of care owed by a similar health care provider and not that owed by an ethicist. See § 766.102(2)(c). Under these circumstances, it may occasionally be appropriate for a medical expert to testify about the ethical aspects underlying the professional standard of care. Cf. Neade v. Portes, 303 Ill.App.3d 799, 237 Ill.Dec. 788, 710 N.E.2d 418 (1999) (allowing physician expert to base opinion on breach of standard of care upon violation of ethical standard established by American Medical Association). It is not appropriate to allow an ethicist to testify about the medical standard of care.
We do not rule out the possibility that the testimony of a medical ethicist might be appropriate in some circumstance. See, e.g., Berger v. Sonneland, 101 Wash.App. 141, 1 P.3d 1187 (2000) (involving malpractice action for emotional damages caused by physician's violation of confidentiality of patient's information); McCracken v. *44 Walls-Kaufman, 717 A.2d 346 (D.C.1998) (involving malpractice action against physician who engaged in sexual misconduct with patient). This case, however, does not present such a circumstance.
Although the admission of this testimony was error, we conclude that it was harmless in this case. The testimony presented was not emotional, overtly religious, or sensitive in nature. Because it was a deposition taken by the plaintiffs' attorneys, the line of questioning was not designed to help the defense. The testimony was cumulative of that of several well-qualified medical experts. This expert readily admitted his lack of medical expertise and did not mislead the jury regarding the weight of his opinion. His testimony was often very abstract, describing such things as the "metaphysical" and "epistemological" issues associated with the "post-Kantian world" and its view that "perception is the real." It is not surprising that all of the lawyers essentially ignored this testimony during closing arguments. As a result, we conclude that the error was harmless and does not require a new trial.
Affirmed.
THREADGILL, A.C.J., and SALCINES, J., Concur.
NOTES
[1] Because the issues on appeal revolve around the propriety of the resuscitation performed, we have omitted the details regarding the negligence alleged in the hospital's record keeping.
[2] Although not apparent from the record, counsel at oral argument agreed that the priest did not testify in religious attire.