Michael & Irene ATRAQCHI,
Appellants,

v.

GUMC UNIFIED BILLING
SERVICES, et al.,
Appellees.

No. 01–CV–217.

District of Columbia Court of Appeals.

Submitted Dec. 11, 2001.
Decided Jan. 10, 2002.

Michael R. Atraqchi and Irene S. Atraqchi, pro se.

Michael M. Hicks, Washington, DC, was on the brief for appellees GUMC Unified Billing Services, Rita A. Manfredi, John M. Howell, Ronald S. Colson and Sheilene Scott.

Ronald M. Abramson was on the brief, for appellee Wolpoff & Abramson.

Before SCHWELB, FARRELL and REID, Associate Judges.

REID, Associate Judge.

Appellants Michael and Irene Atraqchi appeal from the dismissal of their *pro se* civil action against Georgetown University Hospital ("Georgetown"); GUMC Unified Billing Services; and five treating physicians.[1] Their principal contention on appeal is that the trial court dismissed their lawsuit prematurely. We affirm the trial court's dismissal of count II of the Atraqchis' amended complaint, which involves allegations of fraudulent billing. However, because count I fairly put the appellees on notice that the major claim was negligent medical treatment, rather than a civil rights violation, we reverse the dismissal of that count and remand the case for further proceedings consistent with this opinion.

## FACTUAL SUMMARY

The record on appeal shows that on March 16, 2000, Mr. and Mrs. Atraqchi filed an amended complaint against several defendants in the Superior Court of the District of Columbia, with counts sounding in medical malpractice, fraudulent concealment of billing and conspiracy. The amended complaint makes the following allegations. On or about January 1999, Mr. and Mrs. Atraqchi "suffer[ed] from an ailment that caused a swelling to both ankles and feet. . . ." Dr. Twet (Brenda) Ngwa of the U.D.C. Health Center initially diagnosed their condition as "venous insufficiency." The Atraqchis followed the advice given by Dr. Ngwa, which included no medication or treatment,[2] but their condition worsened to the extent that they had to be taken to the Georgetown Medical Center emergency room. There, Dr. Rita Manfredi assigned Dr. John Howell to the

---

1. All of the defendants named in the amended complaint, except Dr. Twet (Brenda) Ngwa, eventually joined or incorporated by reference the motion to dismiss filed by GUMC Unified Billing Services, Dr. Ronald S. Colson and Sheilene Scott. The record is not clear as to the status of Dr. Ngwa, the only treating physician named in the complaint who is not affiliated with Georgetown.

2. Dr. Ngwa allegedly told Mr. Atraqchi "that there is no cure for his illness, no medicine or surgical procedure and refused or neglected to take [his] foot x-rays."

Atraqchis' case and "both affirmed the earlier diagnosis as venous insufficiency...." No x-rays were taken, and the Atraqchis were told to follow the same advice that had been given by Dr. Ngwa. Dr. Howell referred Mr. Atraqchi to Dr. Ronald S. Colson. Dr. Colson examined him on June 24, 1999, and stated that "his venous insufficiency does not confirm (sic) to the classical course of the ailment...." No x-ray was taken. Mr. Atraqchi and Dr. Colson were unable to obtain his medical records from the emergency room doctors at Georgetown, even though the order had been placed thirty days earlier. The emergency room doctors "continued refusing to transmit [the records] to [Dr.] Colson even when he called them personally on the day of the appointment in the presence of [Mr.] Atraqchi."

Later, on October 12, 1999, the Social Security Administration referred the Atraqchis to Dr. Gerald Shugoll when they sought to apply for disability due to their weakened condition. Dr. Shugoll advised the Atraqchis that the diagnosis of venous insufficiency was "wrong," but "refused to further diagnose [their] condition." No x-rays were taken.

> The Atraqchis maintained, in part, that: Defendant (sic) negligently failed to exercise the degree of skill, diligence and care ordinarily exercised by other physicians and surgeons engaged in this type of practice in the City of Washington, D.C. or similar localities. Defendant (sic) negligently failed to take x-rays required for diagnosing plaintiffs' illness, negligently failed to make proper serologic tests, and abandoned treatment of plaintiff without cause.
>
> A[s] a proximate result of defendants' negligence, plaintiffs' condition steadily worsened, and by the time plaintiff

called in another physician, it was to[o] late to effect a cure and the condition became chronic. Accordingly, the plaintiffs have suffered and will in the future suffer, great physical pain and mental anguish, all to the plaintiffs' damage in the sum of $10,000,000.00.

They also asserted that the defendants knew their "injury would be of a permanent nature [but] falsely represented ... that [it] was of a temporary nature and would properly heal in due time."

In count II of the amended complaint, the Atraqchis set forth facts apparently designed to question the billing practices and representations of some of the defendants regarding the cost of services rendered. Specifically, they claim that the "representations were false in fact and known to be false by the defendants at the time they were so made, and in truth and in fact that they contain not only the doctor and hospital bill, but also a collection agency fee and interest, [of] which the plaintiff was not aware."

Appellees filed various motions to dismiss. The motions generally treated count I of the Atraqchis' amended complaint mainly as a civil rights claim, probably because in their jurisdictional statement, the Atraqchis cited "42 U.S.C.A. [§ ]1983, [§ ]1985." After treating count I as primarily alleging violations of the specified civil rights statutes, appellees contended that the Atraqchis did not properly plead the count. Appellees also claimed that count II did not include Mrs. Atraqchi, and was not properly pled.

The trial court signed three orders to dismiss on June 9, 2000, and one on February 15, 2001.[3] The Atraqchis filed a timely appeal.

---

**3.** The claims against Wolpoff & Abramson and Dr. Shugoll were "dismissed" without

explanation. The complaint against GUMC Unified Billing Services, Dr. Colson and

## ANALYSIS

The Atraqchis generally contend that their amended complaint should not have been dismissed for failure to state a claim. Wolpoff & Abramson argues that, "[t]he Atraqchis failed to state any cognizable cause of action against W & A." The remaining appellees assert that the trial court did not err in dismissing the amended complaint because it did not satisfy the pleading requirements for claims under 42 U.S.C. §§ 1983 and 1985.

■ In *Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799 (D.C.1999), we reiterated our standard of review regarding the grant of a motion to dismiss for failure to state a claim under Super. Ct. Civ. R. 12(b)(6):

> In reviewing a motion to dismiss for failure to state a claim, [t]he question whether the complaint states a claim upon which relief may be granted is one of law, and our review of the trial judge's disposition is therefore *de novo*. A pleading should not be dismissed for failure to state a claim unless it is beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief. The allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff and, if these allegations are sufficient, the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail.

738 A.2d at 803 (citations and internal quotation marks omitted). With respect to a medical malpractice case, "the plaintiff has the burden of proving the applicable standard of care, a deviation from that standard by the defendant, and a causal

relationship between that deviation and the plaintiff's injury." *Derzavis v. Bepko*, 766 A.2d 514, 519 (D.C.2000).

■ In their *pro se* amended complaint, the Atraqchis set forth the factual basis of their medical malpractice claim, including the alleged role played by each of the defendant doctors. They allege that the doctors "failed to exercise the degree of skill, diligence and care ordinarily exercised by other physicians and surgeons engaged in this type of practice in the City of Washington, D.C. or similar localities." Specifically, the doctors did not take x-rays, do the proper blood testing, and "abandoned treatment . . . without cause." These allegations were at least minimally sufficient to meet the pleading requirement of the first and second elements of a medical malpractice case, proof of the applicable standard of care, and a deviation from that standard. The amended complaint also established a causal connection between the doctors' alleged negligence and the "chronic" condition of the Atraqchis' feet and their pain and anguish, and thus, satisfied the pleading requirement of the third element of a medical malpractice case, the relationship between deviation from the standard of care and the resulting injury. *See Haymon v. Wilkerson*, 535 A.2d 880, 882 (D.C.1987) (dismissal of claim, under Rule 12(b)(6), for wrongful birth reversed where plaintiff alleged "the elements of a negligence action against a physician, which are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the plaintiff's interests proximately caused by the breach") (citations omitted).

■ The appellees treat count I of the amended complaint as a civil rights claim because of the reference in the statement

Sheilene Scott was dismissed for "failure to state a claim upon which relief can be granted." On February 15, 2001, the complaint

"as to all claims asserted against Defendants" was dismissed "for failure to state a claim upon which relief can be granted."

of jurisdiction to 42 U.S.C. §§ 1983 and 1985. However, as we reiterated in *Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith of Washington, D.C. v. Beards,* 680 A.2d 419 (D.C.1996), *cert. denied,* 520 U.S. 1155, 117 S.Ct. 1335, 137 L.Ed.2d 494 (1997):

> We recognize that liberal rules of pleading normally protect a plaintiff against dismissal of an ambiguous complaint when it can be said to state a claim if all reasonable inferences are drawn in plaintiff's favor. *See* Super. Ct. Civ. R. 8(a) (1996); *Scott v. District of Columbia,* 493 A.2d 319, 323 (D.C. 1985) (under Rule 8(a) complaint is sufficient as long as it fairly puts defendant on notice of claim); CHARLES A. WRIGHT & ARTHUR R. MILLER, 5 FEDERAL PRACTICE AND PROCEDURE § 1215, at 136–38 (2d ed.1990) ("objective of [Rule 8(a)] to avoid technicalities and to require that the pleading discharge the function of giving the opposing party fair notice").

*Id.* at 430. When viewed in the light most favorable to the Atraqchis, count I of the amended complaint fairly put the appellees on notice that the appellants' major claim was that of medical malpractice. Since all of the elements of a medical malpractice claim have been pled, at least minimally, we are unable to say that the Atraqchis "can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Fingerhut,* 738 A.2d at 803. The fact that the jurisdictional statement cites 42 U.S.C. §§ 1983 and 1985, which are unrelated to a medical malpractice action, should not be used as a technicality to support dismissal of count I of the amended complaint. Consequently, the trial court erred by dismissing the complaint under Rule 12(b)(6).

We turn next to count II of the amended complaint. Count II appears to allege "fraudulent conspiracy" and "false and fraudulent representations" regarding billing for medical services. Fraud claims are subject to strict pleading requirements:

> Fraud is never presumed and must be particularly pleaded. It must be established by clear and convincing evidence, which is not equally consistent with either honesty or deceit. The essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.... One pleading fraud must allege such facts as will reveal the existence of all the requisite elements of fraud. Facts which will enable the court to draw an inference of fraud must be alleged, and allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient.

*Bennett v. Kiggins,* 377 A.2d 57, 59–60 (D.C.1977) citing Super. Ct. Civ. R. 9(b) (remaining citations omitted), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).

Count II of the Atraqchis' amended complaint does not meet the pleading requirements of *Bennett* and Super. Ct. Civ. R. 9. Other than providing conclusory allegations, there are no facts in the complaint that would allow a court to draw an inference of fraud. Appellants stated that "[appellees] agreed to treat plaintiff in consideration of the usual compensation for such treatment." However, there are no facts alleged concerning what the appellants consider to be the actual medical expenses. Nor does it specify the section of the bill containing the alleged concealed collection fees and costs. Therefore, the trial court did not err in dismissing count II of the amended complaint.

Accordingly, for the foregoing reasons, we affirm the trial court's dismissal of count II of the Atraqchis' amended complaint, but reverse the dismissal of count I and remand the case for further proceedings consistent with this opinion.

*So ordered.*