Cletus **OPARAUGO**, Appellant,

v.

Lydia **WATTS**, et al., Appellees.

No. 01–CV–437.

District of Columbia Court of Appeals.

Argued Feb. 5, 2003.
Decided Oct. 6, 2005.

---

8. *See, e.g., Deutchman, supra,* 861 A.2d at 1275; *In re Steely,* 806 A.2d 1236 (D.C.2002).

Lois R. Goodman, with whom Hope Umana, was on the brief, for appellant.

Maya Alexandri, Washington, DC, for appellees Lydia Watts and WEAVE, Inc.

Angela F. Collins, Washington, Dc, with whom Susan S. Ferrel, was on the brief, for appellee Victoria Oparaugo.

Before WASHINGTON, Chief Judge,* and FARRELL and WAGNER, Associate

* Judge Washington was an Associate Judge of the court at the time of argument. His status changed to Chief Judge on August 6, 2005.

Judges.**

WAGNER, Associate Judge:

Appellant, Cletus Oparaugo, appeals from an order of the trial court dismissing his case alleging libel and conspiracy to commit libel against appellees, Victoria Oparaugo, her attorney Lydia Watts and Women Empowered Against Violence, Inc. (WEAVE). We reverse and remand for further proceedings consistent with this opinion.

## I.

### A. *Procedural Background*

Appellant, appearing *pro se*, filed a "Complaint for Libel" against WEAVE, Lydia Watts, an attorney employed by WEAVE at the time relevant to his complaint, and his estranged wife, Victoria Oparaugo. Appellees filed a motion to dismiss the complaint pursuant to Super. Ct. Civ. R. (b)(6) (2000) that included several attachments. Appellant filed an opposition to the motion. Before the motion was ruled upon, the case was reassigned to Judge Mary A. Gooden Terrell. Subsequently, appellant retained counsel and filed an amended complaint on February 13, 2001. The trial court granted the motion to dismiss without opinion. Appellant filed a motion for reconsideration which appellees opposed. The trial court denied the motion for reconsideration, and appellant timely noted the present appeal.

### B. *Factual Background*

Appellant and appellee, Mrs. Victoria Oparaugo, were married in their native country of Nigeria in 1987, and subsequently moved to the United States. Five children were born of the marriage, one of whom died. The parties separated, and in

October 1997, Mrs. Oparaugo was awarded "sole, permanent custody of the parties' minor children" in an action between these parties in the Superior Court's Domestic Relations Branch. According to the custody decree, "[a]s a result of violence committed against [Mrs. Oparaugo], and [Mr. Oparaugo's] failure to return the parties' children to the United States, [Mrs. Oparaugo] sought and obtained a CPO [(civil protection order)] in D.C. Superior Court Case No. IF–2607–96."

In his original complaint, appellant alleged that appellee, Ms. Watts, is a lawyer representing Mrs. Oparaugo in a complaint for absolute divorce, and WEAVE is a corporation which has as its purpose providing legal services to women considered to be victims of domestic violence. He alleged that while he was in Nigeria, Mrs. Oparaugo's relatives ambushed him and that her brother shot him in the head and neck nine times and that a criminal investigation followed. According to appellant's complaint, in order to delay the criminal investigation, Mrs. Oparaugo wrote a document dated April 4, 1998 "To Whom It May Concern" in which she knowingly made false and libelous statements about him. The alleged false statements included "that [appellant] was arrested about five times for possession of drugs." He alleged that Mrs. Oparaugo "caused the document to be published to various officials in Nigeria[,]" and "[i]n February of 2000, the Nigerian Court published the document to [him]."

With respect to appellee Ms. Watts, appellant alleged that she wrote an affidavit asserting that an attached document "is a copy of the criminal arrest record of Cletus Oparaugo as kept by the D.C. Superior

---

** Judge Wagner was Chief Judge of the court at the time of argument. Her status changed to Associate Judge on August 6, 2005.

Court, Criminal Division." The attached document was designated "SUPERIOR COURT INFORMATION SYSTEM, SUMMARY BY PDID" and set out "a series of cases in the Superior Court listed by case number, purporting to belong to [appellant]." Appellant alleged that this report was in error, and it was corrected by the Clerk's Office by November of 1996, well before Ms. Watts reported it, and that appellee Watts' false report resulted from her gross negligence in publishing it in 1998. Appellant alleged that Ms. Watts was employed by appellee WEAVE and that her actions on behalf of Mrs. Oparaugo were performed in the course of her work for WEAVE.

Appellees filed a joint motion to dismiss the complaint, and appellant filed an opposition. In support of their motion, appellees argued that: (1) the complaint failed to state a cause of action for defamation because it did not plead the essential elements of publication and falsity; (2) the complaint against Mrs. Oparaugo was barred by the statute of limitations, D.C.Code § 12–301(4) (2001); (3) Ms. Watts' affidavit was privileged as a fair and accurate report of an official record and there were no grounds upon which appellant could overcome the privilege; and (4) Ms. Watts' affidavit and Mrs. Oparaugo's letter were absolutely privileged as statements relating to judicial proceedings and also privileged as statements made to advance protected interests. In his opposition, appellant challenged appellees' arguments, citing the law of this jurisdiction. However, in the last page of his opposition, appellant asserted that the law of the place of the publication governed the case. Therefore, he contended that the law of the District of Columbia applied to Ms. Watts' first publication in front of a notary public here, while the publication of the defamatory statements to her brother in Nigeria required application of Nigerian

law. Appellant did not specify what that law is.

Appellant filed an amended complaint on February 13, 2001 in which he recounted the allegedly defamatory statements made by both Ms. Watts and Mrs. Oparaugo in the first complaint. Further, appellant alleged that Mrs. Oparaugo published her document to "various persons, both private and public, in Nigeria on various dates." He alleged that Ms. Watts published "[her] affidavit and the two attached pages to a notary in the District of Columbia, to whom she gave her oath" and that she "published the document [affidavit] to various persons in Nigeria, including but not limited to Emmanuel Usoh, [Mrs. Oparaugo's brother,] who took charge of publishing the document widely in Nigeria." He further alleged that Mrs. Oparaugo falsely accused him of giving her a "loathsome disease." In addition to alleging libel, appellant alleged conspiracy by appellees to commit libel.

The trial court granted the motion to dismiss the complaint. Appellant filed a motion for reconsideration in which he argued that appellees had made no competent showing of privilege and that the matter was not ripe for either dismissal or summary judgment because appellees failed to provide the law of Nigeria, which applies because it is "the major situs of this incident." Appellant also argued that the statute of limitations defense should not bar his claim because he had a disability, specifically, he had been shot, and had a "long period of recovery." The trial court denied the motion, noting that it had considered all of appellant's arguments and appellees' reply. Appellant noted the present appeal.

## II.

### Choice of Law Issue

Appellant argues that the trial court erred in dismissing the complaint on the

pleadings because he alleged all elements required to state a cause of action for defamation. Further, he contends that the trial court did not have before it sufficient facts to determine whether to apply the law of Nigeria or what that law is. Appellees argue that the trial court properly granted their motion to dismiss because appellant failed to plead with specificity the publication element of defamation and falsity of the statement. With respect to the choice of law issue, appellees contend that appellant waived the applicability of Nigerian law. Since the sufficiency of the complaint must be tested against the applicable law, we consider first appellant's claim that the law of Nigeria applies to at least the major portion of his claim.

Appellees argue that appellant waived the application of Nigerian law because he did not raise the issue in his complaint or amended complaint. Appellant responds that he was not required to plead the application of Nigerian law in the complaint or amended complaint to preserve the issue.

> The applicable civil rule provides that
>
> [a] party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The Court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under Rule 43. The Court's determination shall be treated as a ruling on a question of law.

Super. Ct. Civ. R. 44.1 (2004). Thus, the rule does not provide that the assertion of the applicability of foreign law must be made in the complaint or amended complaint. It provides only that such notice must be "by pleadings or other reasonable written notice." *Id.* The Advisory Committee (the Committee) notes to the comparable federal rule indicate that the issue of foreign law need not be included in the complaint. *See* Fed.R.Civ.P. 44.1 (2004) (Advisory Committee note to 1966 adoption).[1] The Committee notes state, "[t]he [previous] uncertainty under [Fed. R.Civ.P.] 8(a) (2004)[2] about whether foreign law must be pleaded ... is eliminated by the provision that the notice shall be 'written' and 'reasonable.' It may, but need not be, incorporated in the pleadings." *Id.* The Committee explains that:

> [i]n some situations the pertinence of foreign law is apparent from the outset; accordingly the necessary investigation of that law will have been accomplished by the party at the pleading stage, and the notice can be given conveniently in the pleadings. In other situations the pertinence of foreign law may remain doubtful until the case is further developed. A requirement that notice of foreign law be given only through the medium of the pleadings would tend in the latter instances to force the party to engage in a peculiarly burdensome type of investigation which might turn out to be unnecessary; and correspondingly the adversary would be forced into a possibly wasteful investigation.

---

1. Super. Ct. Civ. R. 44.1 is identical to the comparable federal rule in material respects. *See* comment to Super. Ct. Civ. R. 44.1 (noting that Rule 44.1 is identical, "except that it refers to Rule 43 of the Civil Rules of this Court rather than to the Federal Rules of Evidence"). "[W]hen a federal rule and a local rule contain the same language, 'we will look to federal court decisions interpreting the federal rule as persuasive authority in interpreting the local rule.' " *Peddlers Square, Inc. v. Scheuermann,* 766 A.2d 551, 556 n. 4 (D.C.2001) (quoting *Montgomery v. Jimmy's Tire & Auto Ctr., Inc.,* 566 A.2d 1025, 1027 (D.C.1989)).

2. Fed.R.Civ.P. 8(a) sets forth the general requirements for pleading a claim for relief.

*Id.* The Committee also states that the rule was not intended to provide time limitations for notice, and in some circumstances, timely notice may be given even after the claim goes to trial. *See id.* In determining whether notice is reasonable, the Committee recommends that courts consider "[t]he stage which the case had reached at the time of the notice, the reason proffered by the party for his failure to give earlier notice, and the importance to the case as a whole of the issue of foreign law sought to be raised . . . ." *Id.*

In the present case, Nigerian law is not mentioned in appellant's original complaint or the amended complaint. Given the allegations in these pleadings referring to acts that occurred in Nigeria, appellant should have known that there was a possibility that Nigerian law might apply. The Committee notes seem to encourage pleading such matters at an early stage when facts are known suggesting the applicability of foreign law. Appellant's failure to mention foreign law in his original complaint may be attributed to his pro se status at that time. However, there is no suggestion of an impediment to providing notification of an intention to rely on foreign law when the amended complaint was filed and he was represented by counsel. Although appellant could have provided earlier notification, the notice of his claim that foreign law applied still came reasonably early in the proceeding. It was sufficiently timely to alert appellees to the claim and to permit the court to consider the issue. Therefore, the timeliness factor that the Committee suggested for consideration in determining whether the notice was reasonable does not weigh strongly in favor of rejecting appellant's argument for the application of foreign law strictly on the basis that it came too late. However, that does not resolve the question of whether the notice was adequate or whether the trial court erred in applying local law.

"Generally, when parties do not raise the issue of the applicability of foreign law, a court is under no obligation to apply foreign law and may instead apply the law of the forum." *Rymer v. Pool,* 574 A.2d 283, 285 (D.C.1990). Even when a party fails to request the court to apply foreign law, however, the court may do so. *Id.* (citing *Vishipco Line v. Chase Manhattan Bank,* 660 F.2d 854, 860 (2d Cir.1981)). In *Rymer,* this court held that, under the circumstances presented, the trial court erred in dismissing the complaint without engaging in a choice-of-law analysis to consider the law of other jurisdictions that had an interest in the case. *Id.* at 285–86. Rymer had sued Pool for fraudulent inducement to marry, unjust enrichment and fraudulently obtaining property from her. *Id.* at 285. We observed that virtually all transactions relevant to her claims occurred "on a cruise ship in the Caribbean, in the U.S. Virgin Islands, or in the Dominican Republic." *Id.* Pool moved to the District after committing the alleged torts and mailed Rymer a letter admitting that he had fraudulently induced her to marry. Pool continued to live in the District where he could be served with process, and Rymer traveled here in an attempt to persuade him to maintain the marriage. *Id.* This court was persuaded that Rymer had not had a meaningful opportunity to address the choice-of-law question, and therefore, reversed the trial court's decision with instructions to make a choice-of-law decision. *Id.* In that regard, this court explained:

> If the [trial] court had requested that plaintiff file a reply to the answer (as the court could have done pursuant to Super. Ct. Civ. R. 7(a)), or if defendant had filed a motion to dismiss for failure to state a claim and plaintiff had responded to it, plaintiff would have had the opportunity to argue that she had a valid claim and could have focused the court's

attention on the question of the applicability of foreign law. If such had been the case, we would have no reason to reverse the trial court's decision. Since this is not the case, we hold that it was error for the trial court to apply D.C. law without considering the choice-of-law problem.

*Id.*

In this case, unlike *Rymer*, appellant had an opportunity to raise the choice-of-law question and did so. In opposition to appellees' motion to dismiss, appellant first challenged appellees' arguments based on the law of the District of Columbia, citing local authorities for his position. At the end of the opposition, he asserted that the law of the District applied to Ms. Watts' first publication in front of a notary public here, but that the law of Nigeria applied to publication of the defamatory statements to Mrs. Oparaugo's brother in Nigeria. However, appellant did not provide any points and authorities as to what that law is. Similarly, in his motion for reconsideration, appellant argued that the major situs of the events involved was Nigeria. Again, he provided no information on the law of Nigeria. Rather, he appears to have claimed that the burden was on appellees to establish the law of Nigeria. Under the applicable rule, it is the party who intends to rely on foreign law who must notify the other parties of that intention. Super. Ct. Civ. R. 44.1.

■ Appellees argue that appellant did not provide sufficient information for the court to decide the case in accordance with the law of Nigeria, and therefore, he cannot challenge the trial court's application of District of Columbia law. Appellant raised the issue but failed to provide the court with any authorities or information on the law of Nigeria and how it should be applied in assessing the sufficiency of his complaint. The court may consider "any relevant material" in "determining foreign law," and its ruling thereon is considered as a ruling on a question of law. Super. Ct. Civ. R. 44.1. Thus, Rule 44.1 is said to have "put to rest the idea that foreign law is a question of fact which has to be proven by the claimant in order to recover." *Vishipco, supra,* 660 F.2d at 859–60 (discussing Fed.R.Civ.P. 44.1). While the court is not limited to the materials presented by the parties in determining foreign law and can conduct its own research on the subject, "the court is free to insist on a complete presentation by counsel." [3] Advisory Committee notes to the 1966 adoption of Rule 44.1.

We have recognized that "[w]hen both parties have failed to prove foreign law, the forum may say that the parties have acquiesced in the application of the local law of the forum." *Rymer, supra,* 574 A.2d at 285 (quoting RESTATEMENT (SECOND) OF CONFLICTS § 136, cmt. h, at pp. 378–79 (1971)); *see Vishipco, supra,* 660 F.2d at 860 (deciding portion of the claim under local law where neither party invoked foreign law with respect to those claims); *Commercial Ins. Co. v. Pacific–Peru Constr. Corp.,* 558 F.2d 948, 952 (9th Cir.1977) (stating that they apply the principle that "where either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law") (citing RESTATEMENT (SECOND) OF CONFLICTS of LAWS § 136, cmt. h, at pp. 378–379).

---

**3.** This approach avoids placing an undue burden on the court. Similarly, a provision for the court to take "judicial notice" of foreign law was not included in Rule 44.1, in part, "because this would put an extreme burden on the court in many cases[.]" Advisory Committee notes to the 1966 adoption of Rule 44.1.

In the present case, appellant failed to provide any information on the elements of defamation under Nigerian law, and appellees contended that the law of the District applied. Since neither party presented any information on the law of Nigeria, it was permissible for the trial court to apply the law of the District of Columbia even though Nigeria may have had more significant contacts with the transaction.[4] *See Vishipco, supra,* 660 F.2d at 860. Where appellant had a meaningful opportunity to raise the foreign law issue, and he failed to provide information on what the applicable foreign law was, we find no error in the trial court's determination to apply the law of this jurisdiction under the circumstances presented.[5] *See Rymer, supra,* 574 A.2d at 285 (noting that if plaintiff had had the opportunity to argue that she had a valid claim under foreign law, this court would have had no reason to reverse the trial court for not engaging in the choice-of-law analysis).

### III.

### *Application of the Statute of Limitations*

Appellant argues that the trial court did not have an adequate record upon which to determine that the statute of limitations bars his claim. He contends that the defamatory statement was not published to him by an authority in Nigeria until February 2000, thereby triggering a new period of limitations and that the dates of publication to other individuals cannot be ascertained without discovery. Appellant also contends that his disability tolls the statute of limitations under D.C.Code § 12–302 (2001). Appellees argue that the trial court properly granted the motion to dismiss as to Mrs. Oparaugo on limitations grounds where the complaint was filed two years after the date that it is alleged that Mrs. Oparaugo wrote the defamatory statement.

### A. *Applicable Legal Principles*

A complaint for libel must be filed within one year of the accrual of the cause of action. D.C.Code § 12–301(4) (2001). In such cases, the claim arises on the date the defamatory statement was published, and the statute of limitations runs from that date. *Mullin v. Washington Free Weekly, Inc.,* 785 A.2d 296, 298 (D.C.2001). In *Mullin,* this court held that where the defamation is published by a mass media defendant, the "discovery rule" is inapplicable.[6] *See id.* at 299 & n. 5. The rationale underlying this principle is

---

4. However, this is not a case where the transaction had no relationship to the District of Columbia. Appellant alleged that the documents forming the basis of his defamation claim were prepared in the District of Columbia by Ms. Watts, Mrs. Oparaugo and the Superior Court. He also alleged that the first publication occurred here. No doubt, many of the witnesses required to prove appellant's claim are in this jurisdiction. All of the parties were located in the District of Columbia when this action was initiated. Thus, this is not a case where the choice-of-law so clearly favored application of Nigerian law that it can be said that application of the law of the District of Columbia "would not meet the needs of the case, or would not be in the interest of justice." *Rymer, supra,* 574 A.2d at

285 (quoting Restatement (Second) of Conflicts § 136, cmt. h, at pp. 378–79).

5. *See supra* note 4.

6. The discovery rule is applied to determine when the statute of limitations begins to run where "the relationship between the fact of injury and the alleged tortious conduct [is] obscure." *Mullin,* 785 A.2d at 298–99 (quoting *Colbert v. Georgetown Univ.,* 641 A.2d 469, 472 (D.C.1994) (en banc)) (internal quotation marks omitted). In other words, "the statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing." *Id.* at 299 (citation omitted).

that the fact of the injury is readily ascertainable upon publication because the harm occurs with publication. *See id.* at 298–99 (citation omitted). When a person is *non compos mentis* at the time the cause of action accrues, he may bring his action "within the time limited after the disability is removed." D.C.Code § 12–302(a)(2) (2001). The term, *non compos mentis,* means generally one who is not capable of handling his own personal affairs or who cannot function in society. *Hendel v. World Plan Exec. Council,* 705 A.2d 656, 665 (D.C.1997) (citation omitted).

■■■ The statute of limitations is an affirmative defense that must be pleaded by the party asserting it. *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.,* 749 A.2d 724, 734 (D.C.2000) (citing *Feldman v. Gogos,* 628 A.2d 103, 104 (D.C. 1993) and Super. Ct. Civ. R. 8(c) (2000)). The defense may be raised in a motion under Super. Ct. Civ. R. 12(b)(6) where "the defense acts to bar the claim for failure to state a claim upon which relief can be granted." *Id.* (citing 2 JAMES WM. MOORE, *et al,* MOORE'S FEDERAL PRACTICE § 12.34[4][b] (3d ed. 1998) and Super. Ct. Civ. R. 12(b)(6)). "A party pleading the statute [of limitations] defense has the burden of proof unless the claim is barred on its face." *Pekofsky v. Blalock,* 175 A.2d 604, 605 (D.C.1961) (citing *Stern Equip. Co. v. Pogue,* 117 A.2d 447 (D.C.1955)).

### B. *Analysis*

In this case, appellant asserted the statute of limitations as a bar to appellant's claim in the motion to dismiss based upon the allegations in the complaint. The complaint alleged that Mrs. Oparaugo wrote the allegedly defamatory letter on April 4, 1998, with the help of Ms. Watts and that she "caused this document to be published to various persons, both private and public, in Nigeria on various dates." The specific dates of publication are not set forth in the complaint. However, appellant states in the complaint that it was not until February 2000 that the Nigerian court permitted him access to the document and that he filed his original complaint on February 17, 2000. On these facts, he contends that the trial court's order dismissing the complaint cannot be sustained based on the one year bar of the statute of limitations because: (1) Mrs. Oparaugo's letter was republished when provided to him by a Nigerian authority in February 2000, and liability arose at that time; (2) discovery was required to ascertain the dates of publication; and (3) the period of limitations was tolled because of his disability resulting from appellant being shot in the head and neck.

■■ Appellees argue that the February 2000 publication of the letter to appellant could not give rise to a claim or commence a new period of limitations because the tort requires publication to a third party to be actionable. The original publisher of a defamatory statement may be liable for republication if the republication is reasonably foreseeable. *Tavoulareas v. Piro,* 245 U.S.App.D.C. 70, 116, 759 F.2d 90, 136 (1985), *cert. denied,* 484 U.S. 870, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987) (citations omitted). However, a cause of action for defamation requires proof of publication of the defamatory statement to a third party. *See Carter v. Hahn,* 821 A.2d 890, 893 (D.C.2003) (setting forth elements of proof of defamation, including publication of the statement without privilege to a third party) (citation omitted). No actionable claim would arise simply by publication of the statement to appellant, the object of the defamatory statement.[7] Therefore, appel-

---

7. It is not clear from his pleading whether appellant is asserting republication as to the

lant's reliance on the date that the statement was shown to him would be insufficient in itself to save the claim from the bar of limitations as to his cause of action against Mrs. Oparaugo and Ms. Watts, who allegedly assisted Mrs. Oparaugo.[8]

Appellant argues that the statute of limitations was tolled because of his disability. Specifically, he alleged in his complaint and amended complaint that he sustained nine gunshot wounds to the head and neck and that he has seven pellets still lodged in his head. He alleged that the shooting occurred the same year that Mrs. Oparaugo allegedly wrote the defamatory letter. Further, he alleged that "[t]he injury was compounded by the state of [his] health, and [he] was not in a position, recovering from gunshot wounds to the head, to come to the United States ...." Appellees do not challenge appellant's allegation that he sustained the injuries as claimed; however, they contend that appellant testified under oath in a domestic relations case that he recovered from the surgery related to his gunshot wounds in June 1999, thereby making his claim untimely.[9] Appellees argue that the Superior Court can take

judicial notice of its records. See Renard v. District of Columbia Dep't of Employment Servs., 673 A.2d 1274, 1276 (D.C. 1996) (noting that "[g]enerally, a court may take judicial notice of its own records").

In this case, the records that appellees rely upon do not appear to have been presented to the trial court, and they are not a part of the record on appeal. Omission of the material from the record on appeal would preclude its review on appeal. See Mbakpuo v. Ekeanyanwu, 738 A.2d 776, 781 (D.C.1999) (holding that review on appeal cannot be based upon statements of counsel that are not supported by the record). Appellees contend, nevertheless, that this court can take judicial notice on appeal of trial transcripts in another case to refute appellant's claim of disability. We need not decide whether this court can take judicial notice of trial records in a different case because there is another reason that we cannot do so here. Our review of the record indicates that appellees never requested the trial court to take judicial notice of the material it now seeks to use on appeal as evidence to

Nigerian official who showed him the document.

8. Although it might be implicit in his argument, appellant has not argued specifically that the discovery rule should apply to determine when the statute of limitations started to run in this case. Therefore, appellees have not addressed the issue in their brief. This court has rejected application of the discovery rule at least in the context of the publication of defamatory materials by mass media defendants. See Mullin, supra, 785 A.2d at 298, 299 (citations omitted). We reasoned that "[i]njuries alleged to have resulted from the distribution of copies of a weekly periodical through the Washington, D.C. metropolitan area may reasonably be considered public in nature, and discoverable as such." Id. at 299. In Mullin, this court expressly left open the question of whether the discovery rule should be applied where the statement was

undiscoverable because a defendant concealed the material, or because it was not otherwise discoverable. Id. at n. 5 (citing Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., 61 Ill.2d 129, 334 N.E.2d 160, 164 (1975)). There are authorities on both sides of the issue. See Francis M. Dougherty, Limitation of Actions: Time of Discovery of Defamation as Determining Accrual of Action, 35 A.L.R.4th 1002 (1985) (collecting and analyzing state and federal cases addressing whether the discovery rule determines when the statute of limitations begins to run in defamation cases). Since the issue is not clearly raised and has not been briefed, we decline to consider in this appeal what would be an issue of first impression in this jurisdiction.

9. Appellees refer to Oparaugo v. Oparaugo, DR–2041–99, Transcript 106.

refute appellant's claim of a qualifying disability. Points not raised and preserved in the trial court will not be considered on appeal, except in exceptional circumstances that are not present here. *See Cannon v. Igborzurkie*, 779 A.2d 887, 888 (D.C.2001) (citing *D.D. v. M.T.*, 550 A.2d 37, 48 (D.C.1988)) (in turn quoting *Miller v. Avirom*, 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967)) (declining to address a constitutional bar to application of a statute retroactively where not presented in the trial court where no good reason was shown for making an exception, without the benefit of development of a trial record).

■■■ A party asserting an affirmative defense has the burden of proving it. *See Aetna Cas. & Surety Co. v. Carter*, 549 A.2d 1117, 1119 (D.C.1988) (holding that the affirmative defense of contributory negligence must be pleaded and proved by the party asserting it). Thus, a plaintiff must prove that he or she was under a disability. *See* 51 AM. JUR. 2D § 234 (Limitation of Actions) (2000); *see also McCracken v. Walls–Kaufman*, 717 A.2d 346, 349, 355 (D.C.1998) (implying that the plaintiff must prove the existence of the disability). In this case, appellees sought to demonstrate by their motion to dismiss under Super. Ct. Civ. R. 12(b)(6) that appellant's claim was time-barred on its face. *See Executive Sandwich, supra*, 749 A.2d at ·734 (citations omitted) (stating that defense of limitations asserted in a Rule 12(b)(6) motion seeks to bar the action for failure to state a claim upon which relief can be granted). The amended complaint alleges, and the parties do not dispute, that appellant had been shot in the head several times near the time that the allegedly defamatory statements were made and still had bullets in his head and neck. On this record, it is not clear that appellant could present no set of facts that

would entitle him to relief from the limitations bar based on a claim of disability. *See Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 562 (D.C.2002) (citing *Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 803 (D.C.1999)) (setting forth standard that "[a] pleading should not be dismissed for failure to state a claim unless it is beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief"). Given appellant's allegations in the complaint that he sustained head and neck injuries such that he "was not in a position" to take steps to correct appellees' defamatory statements, he may be able to show that "he was *non compos mentis* at the time a substantial portion of his right of action accrued." *See McCracken*, 717 A.2d at 355 (reversing grant of summary judgment where affidavit raised a question as to whether plaintiff was disabled). Therefore, it was premature to dismiss the case against Mrs. Oparaugo based on a claim of the bar of limitations upon appellees' motion to dismiss under Rule 12(b)(6) before appellant had an opportunity to prove that he had a qualifying disability that tolled the statute of limitations.

### IV.

■■■ Appellant argues that the trial court erred in dismissing the complaint for failure to plead all elements of his cause of action. He contends that he properly pleaded all elements of his defamation claim and that any deficiencies in his original complaint were remedied by his amended complaint. Appellant also argues that the trial court did not consider the amended complaint. However, since the trial court stated that it had reviewed "the entire record," we accept that the trial court considered the amended complaint. In any event, this court reviews the dismissal for failure to state a claim *de novo*. *Fingerhut, supra*, 738 A.2d at 803

(citing *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 877 (D.C. 1998)) (other citation omitted). Therefore, we consider on appeal the amended complaint, which is a part of the record before this court.[10]

### A. Applicable Legal Principles

■ To state a cause of action for defamation, plaintiff must allege and prove four elements: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Crowley v. North Am. Telecomms. Ass'n,* 691 A.2d 1169, 1173 n. 2 (D.C.1997) (citation and internal quotation marks omitted). Some courts require a "heightened" standard of pleading for defamation claims. *See id.* at 1172 (citing *Asay v. Hallmark Cards, Inc.,* 594

F.2d 692, 699 (8th Cir.1979); *Wiggins v. Philip Morris, Inc.,* 853 F.Supp. 470, 478 (D.D.C.1994) (other citation omitted)) (explaining that the reason some courts require a heightened standard of pleading in defamation cases is to provide an opportunity for the opposing party to prepare responsive pleadings); *see Black v. National Football League Players Ass'n,* 87 F.Supp.2d 1, 6 (D.D.C.2000) (citing *Wiggins v. Philip Morris, Inc.,* 853 F.Supp. 458, 465 (D.D.C.1994) (applying the principle that "all averments of defamation must be plead with particularity")). However, other courts hold that "heightened pleading standards do not apply in defamation actions." *Messina v. Fontana,* 260 F.Supp.2d 173, 177 (D.D.C.2003) (citing *Croixland Props. Ltd. P'ship v. Corcoran,* 174 F.3d 213, 215 n. 2 (D.C.Cir.1999) (noting that the Federal Rules of Civil Procedure do not require special pleadings and holding that the complaint satisfied the requirements of notice pleading)).

■ Although acknowledging the heightened pleadings rule existing in some jurisdictions, in *Crowley,* this court did not

---

10. Appellant also contends that the court should have treated appellees' motion as one for summary judgment and allowed an additional filing to address the motion. Appellees argue in response that the only documents considered outside of the complaint were those referred to in the complaint that were central to appellant's claim; therefore, they contend that such documents could be considered by the court without converting the motion to one for summary judgment. The relevant rule provides that if a motion to dismiss is filed under Super. Ct. Civ. R. 12(b)(6) for failure to state a cause of action, "matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Super. Ct. Civ. R. 12(b)(6). However, there are circumstances under which documents outside the pleadings can be considered without converting the motion to one for summary judgment. *Greenberg v. Life Ins. Co. of Va.,* 177 F.3d 507, 514 (6th Cir.1999) (citing 11 JAMES WM. MOORE, *et al.,* MOORE'S FEDERAL PRACTICE § 56.30 [(4)] (3d. ed. 1998)). Such a circumstance is when "a document is referred to in the complaint and is central to plaintiff's claim ...." *Id.* (citation omitted). In that case, the defendant may present an authentic copy to the court without converting the motion to one for summary judgment. *See id.* (citing *Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir.1997)). *See also Industrial Bank of Wash. v. Allied Consulting Servs.,* 571 A.2d 1166, 1167 (D.C. 1990) (citations omitted). In this case, the documents involved were referenced in the complaint and are central to appellant's claim. Therefore, the trial court could consider them in connection with the motion to dismiss without converting the motion to one for summary judgment.

specifically adopt the heightened pleading rule for defamation cases. In *Crowley*, we were persuaded that "[t]he factual allegations [in the appellant's complaint] are sufficient to permit the opposing party to form responsive pleadings, the principal reason that some courts demand a heightened standard of pleading in defamations cases." *Crowley, supra*, 691 A.2d at 1172. However, we decided long ago that bare statements of legal conclusions are insufficient to state a claim for libel. *Watwood v. Credit Bureau, Inc.*, 68 A.2d 905, 906 (D.C. 1949). In *Watwood*, we upheld the dismissal of a complaint for libel where appellant failed to allege either the language or the substance of the libelous statements. *Id.* We found the complaint deficient even under our liberal rules of pleading. *Id.* In reviewing an order dismissing a claim for defamation, we continue to adhere to the standard of whether, construing the complaint in the light most favorable to the plaintiff, "it appears beyond doubt that [plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *Crowley*, 691 A.2d at 1172–73 (quoting *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C.1979)) (in turn quoting *Owens v. Tiber Island Condo. Ass'n*, 373 A.2d 890, 893 (D.C.1977)) (other citations omitted). Applying these general principles, we consider the allegations against appellees to determine whether they are sufficient to state a cause of action for defamation.

### B. *Claim Based on Mrs. Oparaugo's Letter*

Appellant argues that the allegations in the complaint were sufficient to state a cause of action for defamation based on Mrs. Oparaugo's letter that she wrote in April 1998 and sent to Nigerian authorities who were investigating appellant's allegations that her brother had shot him. Appellees argue that neither the complaint nor the amended complaint meets the heightened pleading standard for claims of defamation with respect to this letter. Appellees make no serious challenge to the sufficiency of the allegations with respect to the elements of falsity and at least negligent publication of the material. *See Crowley, supra*, 691 A.2d at 1173 n. 2 (setting forth the elements of defamation, which include, among others, the making of a false and defamatory statement and the defendant's fault in publication amounting to at least negligence). Their argument is that "the time, speaker, precise location and listener are not disclosed."

The heightened pleading standard requires that a plaintiff "plead the time, place, content, speaker and listener of the allegedly defamatory matter." *Black, supra*, 87 F.Supp.2d at 6 (citing *Wiggins v. Equifax*, 848 F.Supp. 213, 223 (D.D.C. 1993)). However, as discussed above, this court has not specifically adopted the heightened pleading standard for defamation claims. *Crowley, supra*, 691 A.2d at 1172. Rather, we consider whether the factual allegations are sufficient to permit appellees to respond to appellant's claim of defamation and whether, construing the complaint in the light most favorable to appellant, it appears beyond doubt that he can prove no set of facts that would entitle him to recover. *See id.* at 1172–73 (citations omitted) (applying this standard in assessing the sufficiency of a complaint in a defamation case).

Appellant's amended complaint clearly alleges the nature of the false and defamatory statement, the date of Mrs. Oparaugo's letter containing the information that was addressed "To Whom It May Concern," and the date on which appellant learned of the letter which was then in the records of a Nigerian court. Aside

from this, appellant alleges only that the letter was published "to various persons, both private and public, in Nigeria on various dates." While this latter allegation is insufficient to state the third party to whom the letter was published, allegations that the letter was published to the Nigerian authorities in a court case (setting aside for the moment any claim of privilege) may be sufficient, particularly under the circumstances presented, to withstand the motion to dismiss. Essentially, appellant has alleged that the letter was given to Nigerian authorities who were considering appellant's complaint against Mrs. Oparaugo's family in Nigeria and that an authority at the Nigerian High Court provided him with a copy of the letter in February 2000. These allegations are sufficient to apprise appellees of the persons to whom the letter was published, at least by category. In *Crowley*, we held that identification by employment of the persons to whom a defamatory statement was made was sufficient to permit the opposing party to form responsive pleadings and to withstand a motion to dismiss for failure to state a claim. *Crowley, supra*, 691 A.2d at 1172. Appellant contends that the exact time of publication could not be known without discovery because this information has been concealed from him. From appellant's amended complaint, the time period within which it was published is apparent, *i.e.*, between the date of Mrs. Oparaugo's letter (April 4, 1998) and the time that it was first shown to appellant by the Nigerian authorities (February 2000). These allegations are sufficient to permit appellees to respond, *see Crowley*, 691 A.2d at 1172, and to satisfy the requirements of notice pleading for alleging appellant's cause of action. *See Messina, supra*, 260 F.Supp.2d at 177. Therefore, the trial court's order of dismissal cannot be sustained, at least as to the alleged publication to Nigerian authorities, on the grounds that appellant did not adequately plead his claim with respect to Mrs. Oparaugo's letter.

## C. The Watts/WEAVE Affidavit

■ Appellees also argue that the amended complaint fell short of the heightened pleading requirement for defamation. Again, the jurisdiction has not adopted that standard. Applying the familiar standard for testing the sufficiency of a complaint under Rule 12(b)(6), we conclude that the allegations were sufficient to survive a motion to dismiss. The amended complaint alleges that Ms. Watts signed an affidavit attesting that an attached document was a copy of appellant's criminal and arrest record kept by the Superior Court's Criminal Division and that the statement was false and made negligently and/or with malice on the part of Ms. Watts. The complaint contains further assertions explaining that the document attached to Ms. Watts' affidavit is not a record kept by the Superior Court, that the information contained therein is false, and that the information published was not in the Superior Court's electronic records. Appellant alleges further that Ms. Watts published the affidavit and attached document first to a notary public in Washington, D.C. and then to Emmanuel Usoh in Nigeria, who published it further in that country. Thus, the amended complaint contains allegations of all elements of a cause of action for defamation. *See Crowley, supra*, 691 A.2d at 1173 n. 2.

■ Ms. Watts and WEAVE argue that publication to the notary is insufficient because there is no allegation that the notary read beyond the first page of the affidavit where the notary's stamp appears. They contend that since the affidavit states that appellant has an arrest record and he does have an arrest record, the publication was not defamatory. When

considering a motion to dismiss under Super. Ct. Civ. R. 12(b)(6), we must accept as true all well-pleaded allegations in the complaint and construe the allegations in the light most favorable to the plaintiff. *Atraqchi, supra,* 788 A.2d at 562 (citing *Fingerhut, supra,* 738 A.2d at 803). The complaint alleges that Ms. Watts published "both [her] affidavit and the two attached pages to a notary public." The reasonable inference from this allegation is that the notary read, or had the opportunity to read, the affidavit and accompanying papers. *See Atraqchi,* 788 A.2d at 563 (noting that the court must draw reasonable inferences from the complaint in the plaintiff's favor). Whether the notary read or did not read beyond the first page is a factual question that cannot be resolved by the court on a motion to dismiss for failure to state a claim. Accepting as true the allegations of the complaint, as we must, including reasonable inferences therefrom, and construing the complaint in the light most favorable to appellant, the complaint is sufficient. In such circumstances, the complaint is not subject to dismissal even if the court were to doubt that plaintiff would prevail ultimately. *See Klayman v. Segal,* 783 A.2d 607, 612 (D.C.2001) (citing *Atkins v. Industrial Telecomms. Ass'n,* 660 A.2d 885, 887 (D.C.1995)). Therefore, the complaint against Ms. Watts and her employer, WEAVE, could not be dismissed under Super. Ct. Civ. R. 12(b)(6) on the assumption that the notary did not read the documents.

## V.

Appellant argues that the amended complaint should not have been dismissed because the record does not show that appellees had a privilege. Appellees argue that the trial court properly granted the motion to dismiss because: (1) Ms. Watts' affidavit was a fair report of an official government document; (2) the allegedly defamatory statements were absolutely privileged as statements made in the course of judicial proceedings; and (3) the statements were privileged as made to advance protected interests.

### A. *Claimed Privilege for Statements Made in Judicial Proceedings*

 This jurisdiction, like the majority of other jurisdictions, "has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relationship to the proceeding." *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.,* 774 A.2d 332, 338 (D.C.2001). Under this jurisdiction's rule, an attorney has an absolute privilege "to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he [or she] participates as counsel, if it has some relation to the proceeding." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 586 (1977)). "The judicial proceedings privilege is 'based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients.'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 586 cmt. a).

 There are some limitations on the application of the privilege relevant to appellees' claim of privilege. Treatises addressing this issue have indicated that the so-called judicial privilege applies to judges, court officers, attorneys, parties, grand and petit jurors performing those functions, witnesses and participants in judicial proceedings. *See* PROSSER AND KEETON ON TORTS at 816–17 (5th ed. 1984) (noting that there is absolute immunity in

judicial proceedings for judicial officers acting in an official capacity, grand and petit jurors performing their functions, witnesses even if testifying by affidavit, counsel in the conduct of the case, parties and "instigators of prosecution in criminal cases") (citations omitted); and Robert Sack, SACK ON DEFAMATION § 8.2.1 (3d. ed. 2005) (noting that the privilege extends to "parties, witnesses, counsel, jurors, and judges"). Appellees cite no cases in support of the extension of this absolute privilege to a person who was not involved in, or connected with the judicial proceedings in one of the type of capacities indicated. Therefore, appellees failed to show at the pre-answer stage of the proceedings that Mrs. Oparaugo's statements are protected by the judicial proceedings privilege.[11]

Ms. Watts is alleged to be an attorney, and therefore she comes within the category of individuals qualifying for the protection of the privilege. With respect to the absolute privilege for attorneys for statements made in judicial proceedings, this court has stated: "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he [or she] participates as counsel, if it has some relation to the proceeding." *Finkelstein, supra,* 774 A.2d at 338 (quoting RESTATEMENT (SECOND) OF TORTS § 586) (other citations omitted).

There is no contention that the Nigerian Court proceedings were not judicial proceedings. Rather, appellant argues that Ms. Watts was not participating as an attorney in those proceedings as she was not the lawyer for anyone involved in the proceeding or even licensed to practice law in Nigeria. Appellant argues that the mere showing that the participants in the Nigerian criminal investigation and subsequent civil rights suit are the brother and the estranged husband of appellee, Mrs. Oparaugo, and that Ms. Watts represents Mrs. Oparaugo in other matters, are insufficient interests to trigger this privilege. Further, he contends that the publication of the defamatory material had no connection to the proceeding in the District in which Ms. Watts represented his wife. Appellees seem to argue that Mrs. Oparaugo had an interest in the proceeding in Nigeria and that she engaged Ms. Watts to help her advance that interest; therefore, she is entitled to an absolute privilege.

For at least two reasons, appellees' argument is not persuasive on this point. First, there has been no showing that the alleged defamatory documents were published in connection with the court proceeding or even in contemplation of a court proceeding in Nigeria in which Ms. Watts represented Mrs. Oparaugo's interest. Appellant alleges that the defamatory statements were published in a proceeding where Mrs. Oparaugo's brother, whom appellant accused of shooting him, alleged that appellant had violated his civil rights by filing a criminal complaint against him. Second, appellees have cited no cases that stand for the proposition that an attorney for a client who is not a party to a proceeding, a potential party or witness or otherwise connected with the proceeding is entitled to an absolute privilege of counsel. To the contrary, the language from *Finkelstein* makes it clear that the attorney

---

11. Although it is claimed that Mrs. Oparaugo provided information in an effort to help her brother, it was not shown that she was a witness or a potential witness in the criminal investigation of her brother or his civil rights case in the Nigerian proceedings. Indeed, the facts alleged suggest the contrary.

claiming absolute privilege must be involved in the proceeding, not merely an attorney advocating the interest of a non-party. The language states that an attorney is protected for statements made "as a part of a judicial *proceeding in which he* [*or she* ] *participates as counsel.*" *Finkelstein, supra,* 774 A.2d at 338 (emphasis added). Thus, merely acting as an attorney is insufficient; the attorney must participate as counsel in the relevant proceeding. Since appellees failed to show that Ms. Watts was participating as counsel in the Nigerian proceeding, it cannot be determined on this record that she is entitled to claim absolute privilege.[12]

B. *The Fair Reporting Privilege*

 Appellees, Ms. Watts and WEAVE, argue that their statements are fair and accurate reports of an official record, and therefore, privileged for purposes of a defamation claim. This jurisdiction recognizes a fair reporting privilege. The privilege is based on the common law privilege to report official proceedings, which has been described in the following way: "[d]efamatory matter concerning another in a report of any official proceeding or any meeting open to the public which deals with matters of public concern is published on a conditionally privileged occasion if the report is (a) accurate and complete, or a fair abridgement of what has occurred, and (b) published for the purpose of informing the public as to a matter of public concern." *Phillips v. Evening Star Newspaper Co.,* 424 A.2d 78, 88 (D.C.1980), *cert. denied,* 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981)

(quoting RESTATEMENT (SECOND) OF TORTS § 611 (Tent. Draft No. 20, 1974)). In *Phillips,* this court stated that the courts of this jurisdiction have extended the reporting privilege beyond judicial proceedings and rejected the "official act" requirement. *Id.* at 89 (citations omitted). In order to avail itself of the privilege, the publisher must give fair attribution to the source of the alleged official record. *See id.* at 89. The privilege protects the accurate report of even false information provided it is information obtained from an official record and proper attribution is given to its source. *See id.* (holding that inaccurate arrest information obtained from a police hotline does not qualify as an official record for purposes of the privilege).[13] *See also Bell v. Associated Press,* 584 F.Supp. 128, 130 (D.D.C.1984) (noting that the privilege covers "the reporting of both true and false factual matters") (citations omitted). The privilege is a qualified one. *See Phillips,* 424 A.2d at 88. Therefore, it can be defeated by the presence of malice. *Harper v. Walters,* 822 F.Supp. 817, 824 (D.D.C.1993) (citing *Johnson v. Johnson Publishing Co.,* 271 A.2d 696, 697 (D.C.1970)).

 Ms. Watts stated in an affidavit that the document attached thereto "is a copy of the criminal arrest record of Cletus Oparaugo as kept by the D.C. Superior Court, Criminal Division." Appellant alleged in his complaint that the Superior Court is not responsible for keeping "arrest records" of individuals arrested in the District of Columbia. Further, he alleged that there is no such record for him in the Superior Court's Master Computer and

12. Appellees will not be foreclosed from attempting to show entitlement to the privilege after the record is further developed.

13. In *Phillips, supra,* this court held that the common law privilege of official reporting did not cover a newspaper's false statements made in reliance on a police hot line because it is not an arrest record nor a record required to be kept by statute. 424 A.2d at 89–90. It was simply the newspaper's informal arrangement with the police to obtain unofficial statements regarding crimes. *Id.*

that the document that appellees reported was not a "true" record of the District of Columbia. Appellees contend otherwise and readily may be able to establish their contention at a later point in the proceedings. However, whether the document that appellees published is an official record to which the privilege attaches cannot be resolved on the present record. *See Phillips, supra,* 424 A.2d at 89 (comparing a case where the privilege for reporting an arrest was established when shown that the report came from the arrest docket and log book and rejecting the police "hot line" log as an official document upon which the newspaper could rely for purposes of asserting the privilege of reporting official proceedings) (citation omitted).[14]

### C. *Protected Interest Privilege*

■■■■ Appellees argue that Ms. Watts' affidavit and Mrs. Oparaugo's statement are conditionally privileged as statements made to advance protected interests. To qualify for the "protected interest" privilege, "the communication must be one made in good faith upon a subject 'in which the party communicating has an interest or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty....'" *Smith v. District of Columbia,* 399 A.2d 213, 220 (D.C.1979) (quoting *May Dep't Stores Co. v. Devercelli,* 314 A.2d 767, 773 (D.C.1973) (footnote omitted)). Appellees acknowledge that although " '[this] qualified privilege is a complete defense to libel, ... the defense is lost by

the showing of malice.' " *Columbia First Bank v. Ferguson,* 665 A.2d 650, 656 (D.C. 1995) (quoting *Mosrie v. Trussell,* 467 A.2d 475, 477 (D.C.1983)). The complaint alleges that appellees acted with malice in publishing the defamatory material. Appellant alleged that appellees' purpose was to "bring[ ] disgrace, shame and humiliation upon him and otherwise belittl[e] his reputation in the community." Further, he alleges that they acted with knowledge of the falsity of their statements. If the statement is determined to be privileged, then appellant will have the burden of proving that appellees acted with malice. *Id.* (citing *Ford Motor Credit Co. v. Holland,* 367 A.2d 1311, 1314 (D.C.1977)). Whether a person acts with malice is ordinarily a question of fact for the jury. *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan,* 374 A.2d 284, 290 (D.C.1977) (citation omitted). Therefore, dismissal of the amended complaint on the grounds of the asserted protected interest privilege would be premature on the present record.

For the foregoing reasons, the case is reversed and remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

**14.** Appellant also challenges the report for inaccuracy. However, for purposes of this privilege, accuracy is not determined by comparing the official record with the actual facts; it is judged by comparing the publisher's report with the official record. *See Bell, supra,* 584 F.Supp. at 130 (noting that since the reporting privilege covers both true and

false material in official reports, "the article must be compared, not with the events as they actually transpired, but with the official reports that the newspaper republished") (quoting *Mathis v. Philadelphia Newspapers, Inc.,* 455 F.Supp. 406, 417 (E.D.Pa.1978)) (other citation omitted).